**SAINT MARY OF NAZARETH HOS-PITAL CENTER, an Illinois not-for-profit corporation, Plaintiff,**

v.

**Donna SHALALA, Secretary of the U.S. Department of Health and Human Services, Defendant.**

No. 98 C 5701.

United States District Court,
N.D. Illinois,
Eastern Division.

May 5, 2000.

Karen R. Goodman, Marcos Reilly, Kurt L. Hudson, Hinshaw & Culbertson, Chicago, IL, for St. Mary of Nazareth Hospital Center, an Illinois not-for-profit corporation, plaintiff.

Kurt N. Lindland, United States Attorney's Office, Chicago, IL, for Donna Shalala, as Secretary of the U.S. Department of Health and Human Services, defendant.

### MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff Saint Mary of Nazareth Hospital Center has filed a five count amended complaint for administrative review, declaratory judgment, and damages against Donna Shalala, Secretary of the U.S. Department of Health and Human Services ("Secretary") pursuant to Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, the Administrative Procedure Act, 42 U.S.C. § 1395oo(f)(1), and the Declaratory Judgment Act, 28 U.S.C. § 2201. Plaintiff is seeking review of a final decision of the Secretary reversing in part and

affirming in part a decision of the Provider Reimbursement Review Board ("PRRB") regarding graduate medical education ("GME") reimbursement. The parties have filed cross-motions for summary judgment.

## Background

This case arises from the Medicare program for reimbursing teaching hospitals for the costs of graduate medical education. Section 1886(h) of the Social Security Act provides for payments for direct GME costs starting with the cost reporting periods beginning on or after July 1, 1985. 42 U.S.C. § 1395ww(h). The Secretary contracts with private entities called fiscal intermediaries to implement reimbursement for Medicare related services. Among other things, the intermediary determines the amount of payments to be made to a hospital based on a cost report filed by the hospital. 42 U.S.C. § 1395g, 1395h; 42 C.F.R. §§ 405.1801, 405.1803, 412.110–15. The intermediary (in this case, Blue Cross/Blue Shield of Illinois) then issues a notice of program reimbursement ("NPR") to the hospital that includes the amount to be reimbursed to the hospital. A hospital that disagrees with the intermediary's determination may request a hearing before the Provider Reimbursement Review Board ("PRRB"). The Secretary, through authority delegated to the Administrator of the Health Care Financing Administration ("HCFA"), may reverse, affirm or modify the decision of the PRRB on her own motion. The final decision of the Secretary is subject to judicial review pursuant to 42 U.S.C. § 1395oo(f)(1).

Prior to 1983, hospitals were reimbursed for GME costs on a "reasonable cost basis" by preparing an annual cost report showing the portions of physician time and other resources dedicated to the teaching of residents and interns. These cost reports were submitted to the intermediary along with documentation sufficient to support the claimed costs.

In 1983, Congress established a new system for GME reimbursement for the cost reporting period beginning July 1, 1985. 42 U.S.C. § 1395ww(h)(2)(A). Under the new system, Medicare would reimburse teaching hospitals with a GME payment in an amount calculated by multiplying: 1) a standardized per resident amount calculated for a base year and adjusted annually thereafter for inflation (the "average per resident amount," or "APRA"); by 2) the number of interns and residents in the hospital's GME programs during subsequent cost reporting years. 42 U.S.C. § 1395ww(h)(2), (3); 42 C.F.R. § 413.86(d)(1984) was selected as the base year for determining the APRA.

In 1989, the Secretary issued regulations establishing procedures for determining the base-year GME costs for the providers. 42 C.F.R. § 413.86 (1998). The new regulation directed intermediaries to perform a re-audit of the cost reports submitted by each hospital for the 1984 base year to ensure that future GME reimbursement would be based on an accurate APRA. Operating costs misclassified as GME cost were to be excluded from the base year GME cost center by the intermediary, and intermediaries were likewise authorized, upon request of a hospital, to include previously misclassified GME costs in the re-audited base year GME amount. 42 C.F.R. § 413.86(e)(1)(ii)(A)–(C).

St. Mary at all relevant times was a provider of Medicare services and a teaching hospital. On February 27, 1991, the intermediary issued a notice of average per resident amount (APRA) based on a re-audit of St. Mary's 1984 base year. In August 1991, St. Mary requested that certain costs be included in the APRA calculation and appealed the notice of the APRA to the PRRB. A PRRB hearing was held in September 1996. On May 8, 1998, the PRRB affirmed the intermediary's decision regarding the issues designated 6, 7 and 8 and reversed the intermediary's determination regarding issues 2 and 9.[1] On

---

**1.** The issue numbers used by the parties are derived from PRRB Decision No. 98–D49.

The issues are explained in detail in the discussion of Counts I and II below.

July 13, 1998, the Deputy, acting for the Administrator of HCFA issued the final decision of the Secretary. This decision affirmed the PRRB as to Issues 6, 7 and 8, reversing the PRRB on Issues 2 and 9. St. Mary now seeks judicial review of the final decision of the Secretary pursuant to the Administrative Procedure Act ("APA"), 42 U.S.C. § 1395oo(f).

### Discussion

■ Under the APA, a court must affirm the Secretary's decision unless it is found to be arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with the law. 42 U.S.C. § 1395oo(f); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994). An agency's interpretation of its own regulations must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation. *Id.; Hinsdale Hosp. Corp. v. Shalala*, 50 F.3d 1395, 1399 (7th Cir.1995).

Plaintiff challenges the Secretary's decision regarding Issues 2, 6, 7, 8 and 9 as being arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and not in accordance with the law. Before considering the factual issues contended by the parties, the plaintiff raises several sub-issues involving the administrative review process that must be addressed.

### I. *Plaintiff's Challenges to Deference Due to the Secretary's Decision*

#### A. Deference Given to PRRB Decisions as a "Trier of Fact"

■ In its motion, plaintiff asserts that the Secretary's decision in this case is not entitled to deference. Instead, plaintiff urges the court to hold that the PRRB's decision on these issues is entitled to greater deference than the Secretary's because the PRRB is a "trier of fact" capable of judging the demeanor of wit-

nesses and determining issues of credibility. Plaintiff's reliance on principles of appellate review is misguided in this context. The relationship between the Secretary and lower level hearing officers within her agency is quite unlike that between trial and appellate courts. On review of a PRRB decision, the Secretary has all the powers she would have if she were to make the initial determination. 5 U.S.C. § 557(b). Final responsibility for rendering a decision lies with the Secretary, not with subordinate hearing officers, and it is the decision of the Secretary that the court reviews. Thus the decision of the PRRB carries no more weight on review by the Secretary than any other interim decision made along the way in an agency where the ultimate decision of the agency is controlling. *Saint Francis Hosp. Center v. Heckler*, 714 F.2d 872, 874 (7th Cir.1983).[2]

■ Upon judicial review of an agency decision, the Secretary is considered the fact-finder and deference is given to the Secretary's factual findings. *Adventist Living Centers, Inc., v. Bowen*, 881 F.2d 1417, 1420 (7th Cir.1989). *See also Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994); *Shalala v. Guernsey Memorial Hosp.*, 514 U.S. 87, 115 S.Ct. 1232, 1236, 131 L.Ed.2d 106 (1995). The fact that the PRRB and the Secretary may have reached different conclusions in this case does not diminish the deference due to the Secretary's final decision. *Adventist Living Centers, Inc.*, 881 F.2d at 1421. Plaintiff's arguments do not persuade this court to abandon the deference due the Secretary's decision in this case.

#### B. HFCA as a Biased Forum

■ Plaintiff next argues that, because HCFA allegedly reverses more PRRB decisions that favor providers than those that favor intermediaries, HCFA constitutes a

---

**2.** Plaintiff correctly distinguishes *Heckler* from the present case. The plaintiff in *Heckler* was not challenging a factual finding by the PRRB. The factual differences between *Heckler* and the present case do not, however, alter the standard of deference for the Secretary's decisions set forth in that case.

"biased forum," and the decision is therefore not entitled to deference. The fact that raw statistics suggest that a greater number of PRRB decisions may be reversed by the Secretary in favor of intermediaries in no way affects the standard of review to be exercised in this case.

**C. Whether the Secretary's Review and Reversal of the PRRB's Decision is Contrary to the Express Language of 42 C.F.R. § 405.1875**

Plaintiff next argues that the Secretary's decision is not entitled to deference in this case because the statute governing HFCA review of a PRRB decision permits only five grounds on which the Secretary may reverse such a decision, and that the Secretary may not reverse a PRRB finding of fact. 42 C.F.R. § 405.1875. Plaintiff is clearly incorrect. The regulation cited does not set limits on permissible bases for reversal of PRRB decisions. Instead, 42 C.F.R. § 405.1875 states that, in deciding whether to review a PRRB decision, the Administrator will "normally" consider whether any of the enumerated situations exists. *Id.*

■ Plaintiff is mistaken in asserting that the Secretary is not permitted to reverse the PRRB merely because she disagrees with a finding of fact that the PRRB found to be supported by substantial evidence. The decision of the Secretary is the final decision of the agency, and it is the ultimate duty of the Secretary, not the PRRB, to assess whether the decision is supported by substantial evidence. *St. Francis Hosp. Center v. Heckler*, 714 F.2d 872, 874 (7th Cir.1983). As the Secretary correctly argues, it is her decision that is before the court, and its is her decision that must meet the "substantial evidence" test.[3] *Id.*

**D. Whether the PRRB and HFCA's Non–Consideration of the Intermediary's Non–Performance of Contractual Duties Violate Plaintiff's Constitutional Due Process Rights**

■ Plaintiff argues that the HFCA and PRRB decisions on Issues 6, 7 and 8 should be reversed because both forums failed to address the intermediary's failure to respond to the Hospital's misclassified cost requests. Plaintiff claims that it was not aware that its request for including the misclassified costs was being denied for lack of adequate documentation and contends that it was deprived of an opportunity to adequately document its request because it never knew until the PRRB hearing that more documentation was required. Plaintiff seems to be arguing both that the Intermediary's failure to inform plaintiff of the lack of adequate documentation and the PRRB and HFCA failures to address this issue denied it a fair hearing as required by 42 C.F.R. § 405.1855 and 42 C.F.R. § 405.1859, 1871 and 1875(e).

When the PRRB accepted jurisdiction in this case in October 1995, the Board's decision explicitly stated that the intermediary refused to reclassify the disputed costs under GME because plaintiff failed to provide acceptable documentation in support of its request. The PRRB hearing occurred one year after this in September 1996. If plaintiff truly felt that the intermediary had wrongfully prevented it from

---

3. Plaintiff contends that because the Administrator did not review and reverse the factual findings in *Mercy Hospital of Pittsburgh v. Blue Cross and Blue Shield Association/Blue Cross of Western Pennsylvania*, PRRB Decision No. 98–D26, it should be precluded from doing so in this case. Plaintiff's reference to a previous PRRB decision that the Administrator chose not to review, like many of the points raised by plaintiff, is simply not relevant to the case now before the court. The fact that the Administrator chose not to re-

view a different PRRB decision with only generally similar issues in no way controls the court's current review of the Secretary's decision in this case. Additionally, the *Mercy Hospital* case is distinguishable in that the PRRB relied on contemporaneously maintained records in finding for the provider. In the present case, one of the Secretary's main grounds for reversal of the PRRB decision is that the provider failed to provide such contemporaneously maintained records in support of its case.

presenting adequate documentation to support its request for reclassification, it certainly could have raised this as an issue before the PRRB. Plaintiff had nearly a year to gather whatever documentation it did have in support of its request and present if before the PRRB. Additionally, plaintiff's due process arguments are subsumed under the hospital's general argument that the decision was arbitrary, capricious and unsupported by substantial evidence. *Little Company of Mary Hospital and Health Care Centers v. Shalala,* 994 F.Supp. 950, 961 (N.D.Ill.1998). There was no denial of plaintiff's due process rights in this case. The court will discuss below the arguments raised by plaintiff on the merits of Issues 2, 6, 7, 8 and 9.

## II. *Counts I and II*

■ On review of an agency decision, the court does not reweigh the evidence or substitute its own judgment for that of the Secretary. *Cass v. Shalala,* 8 F.3d 552, 555 (7th Cir.1993). The court's inquiry is limited to whether there is substantial evidence to support the decision. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Anderson v. Bowen,* 868 F.2d 921, 923 (7th Cir.1989).

### A. Issue 2—Exclusion of Costs Relating to Undergraduate Medical Students from GME Reimbursement

During the re-audit of plaintiff's base-year GME costs, the intermediary disallowed 50% of the salaries paid to Chicago Medical School faculty as not being related to GME costs. The intermediary found these costs to be related to the teaching of undergraduate rather than graduate medical students. Plaintiff sought review from the PRRB and the PRRB reversed the intermediary's decision, finding that the teaching costs were not related to undergraduate medical education and should not be disallowed. On her own motion, the Secretary reversed the PRRB decision on this issue.

■ There is substantial evidence supporting the Secretary's decision to reverse the PRRB decision and reinstate the decision of the Intermediary reducing the GME costs connected with the education of undergraduate medical students. The budget of the Chicago Medical School program at St. Mary for 1983–84 showed that there were 44 undergraduate students and 35 graduate residents in the program. Additionally, the Secretary points to the 1981 affiliation agreement between St. Mary and the Chicago Medical Center which refers several times to the comprehensive inclusion of undergraduates in the educational programs at St. Mary's. The Secretary also relied on a 1979 letter from the Dean of the Chicago Medical School to the President of St. Mary about the teaching programs conducted at the Hospital. This letter emphasizes the participation of undergraduates in clinical education at the hospital and states clearly that both undergraduates and graduates work under the direct supervision of the faculty. These documents provide substantial evidence from which the Secretary could find that the costs incurred by the hospital were for clinical teaching activities at the hospital and that undergraduates participated in a substantial way in these activities.

It was certainly within the proper discretion of the Secretary to weigh the evidence from contemporary sources more heavily than the testimony offered by William Konkel and Dr. Becker at the 1996 PRRB hearing, some of which testimony, as the Secretary notes, was rather equivocal. The re-audit of the 1984 base year was to ensure that future payments would be based on an accurate determination of 1984 costs. *Regions Hospital v. Shalala,* 522 U.S. 448, 118 S.Ct. 909, 914, 139 L.Ed.2d 895 (1998). Claims for additional GME costs based on evidence produced subsequent to the base year are "inherently less reliable" because hospitals have significant incentives to inflate their GME

costs in the base year. *Presbyterian Medical Center of the University of Pennsylvania Health System v. Shalala*, 170 F.3d 1146, 1150 (D.C.Cir.1999).

The court holds that there was substantial evidence to support the Secretary's decision to affirm the finding of the Intermediary in excluding the costs of undergraduate clinical education from the 1984 GME costs.

## B. Issue 6—Exclusion of Certain Expenses from the GME Cost Center

During the re-audit, plaintiff claimed additional GME costs pertaining to the salaries of the Assistant Residency Director and staff, non-payroll costs for interns and residents and costs for malpractice insurance for interns and residents. The Intermediary, the PRRB, and HCFA all found that plaintiff failed to produce sufficient documentation to demonstrate that the reclassification of the costs was warranted.[4] Plaintiff contends that, had the Intermediary informed plaintiff that the documentation was inadequate, it could have provided such documentation. The facts show, however, that plaintiff was aware by October 1995 at the latest that insufficient documentation was the reason for the intermediary's denial of its request. Plaintiff was still unable to produce documentation sufficient to satisfy the PRRB by September 1996. If plaintiff possessed other documentation in support of its request for reclassification of costs, "it should have put those documents into the administrative record to preserve its claim." *Presbyterian Medical Center of the University of Pennsylvania Health System v. Shalala*, 170 F.3d 1146, 1152 (D.C.Cir.1999). In fact, plaintiff fails to direct the court's attention to any evidence in the record that would undermine or contradict the Secretary's decision. Accordingly, the court finds that the Secretary's decision in denying reclassification of the costs in Issue 6 to the GME cost center is neither arbitrary nor capricious and is supported by substantial evidence.

## C. Issues 7 and 8—Classification of Laundry and Linen Costs and Costs of Meals for Residents and Interns

In Issue 7 plaintiff sought to have costs related to laundry and linen services to sleeping rooms used by residents included in the GME Cost Center. In Issue 8 plaintiff sought to have costs of free meals provided to interns and residents allocated to the GME Cost Center. As with Issue 6 above, the intermediary, PRRB and HFCA all found that plaintiff failed to provide sufficient documentation to support its request for reclassification of these costs to the GME Cost Center. Again, plaintiff does not argue that the Secretary's decision is unsupported by substantial evidence. Instead, plaintiff seeks to blame the intermediary for its own failure to submit adequate documentation supporting its request.

■■■ It is the provider, not the intermediary, that bears the burden of providing evidence to establish its claim. *Johnson County Mem. Hosp. v. Heckler*, 761 F.2d 354, 358 n. 8 (7th Cir.1985). Although the intermediary's failure to provide a written determination in this matter is troubling, it did not prevent plaintiff from producing whatever contemporary evidence it had before the PRRB. The Secretary's decision must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994). Plaintiff offers nothing to demonstrate that the decision of the Secretary was not based on substantial evidence, only that plaintiff did not have a chance to present sufficient documentation. Accordingly, the court finds that the Secretary's decision regarding Issues 7 and 8 was neither arbitrary nor capricious and is due deference by this court.

---

4.  42 C.F.R. § 413.86(j)(2)(ii) (1997) requires that adequate documentation be provided

*with the request* for inclusion of misclassified costs as GME costs for the base year APRA.

### D. Issue 9

In Issue 9 plaintiff claimed additional square footage amounts for sleeping and conference rooms used by interns and residents. The intermediary found that the hospital did not provide sufficient documentation to allow the intermediary to reclassify the space under the GME cost center. In support of its claim for reclassification of the operating costs to GME costs, plaintiff submitted the following documentation to the PRRB: (1) the 1996 affidavit of Dr. Bruce Becker containing his recollections of how the space was used in 1984; (2) the one-page 1996 affidavit of Ed Hogan, Director of Materials Management; (3) a 1996 work paper regarding calculation of allowable square footage for 1984; (4) floor maps of the relevant areas prepared in 1996.

■ Requests for additions to the GME cost center during the re-audit process are fairly viewed with skepticism by the Secretary. *Presbyterian Medical Center of the University of Pennsylvania Health System v. Shalala,* 170 F.3d 1146, 1150 (D.C.Cir.1999). To show that legitimate GME costs were omitted from the base year, the Medicare regulations and HFCA guidelines to intermediaries require that claims for such costs be supported by actual documentation developed during the GME base-period that was maintained in a auditable format.[5] 54 Fed.Reg. 40286, 40301 (September 29, 1989); *Presbyterian Medical Center of the University of Pennsylvania Health System v. Shalala,* 170 F.3d 1146, 1150–51 (D.C.Cir.1999). The documents relied upon by plaintiff were not developed during the base year, but in preparation for the PRRB hearing. The Secretary's decision to deny plaintiff's request regarding Issue 9 was within her discretion and was neither arbitrary nor capricious.

### *Conclusion*

For the reasons set forth above, the court denies plaintiff's motion for summary judgment and grants defendant's motion for summary judgment.[6]

---

5. Documentation from cost reporting years subsequent to the base year are allowed in support of claims for reallocating physician compensation costs. This is an exception to the general rule. 55 Fed.Reg. 36063–36064.

6. Plaintiff complains that the Secretary did not file a Local Rule 12M (now renumbered Local Rule 56.1) statement of uncontested facts in support of her motion for summary judgment. Although the court expects compliance with this rule, *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1315 (7th Cir.1995), in the instant case the "material facts" required for decision are those contained in the administrative record, which was put before the court in the other submissions of the parties. The Secretary's failure to comply with the local rule was therefore excusable.