STATE of Alaska and Frank Rue,
as Commissioner of Fish and
Game, Appellants,

v.

KENAITZE INDIAN TRIBE, Ninilchik
Traditional Council, Knik Tribal Coun-
cil, and Native Village of Eklutna, Ap-
pellees.

Kenaitze Indian Tribe, Cross–Appellant,

v.

State of Alaska and Frank Rue,
as Commissioner of Fish and
Game, Cross–Appellees.

No. S–10358.

Supreme Court of Alaska.

Jan. 16, 2004.

**1062**

Stephen M. White, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellants/Cross–Appellees.

Goriune Dudukgian and James J. Davis, Jr., Alaska Legal Services Corporation, Anchorage, for Appellee/Cross–Appellant Kenaitze Indian Tribe, and for Appellees Knik Tribal Council and Native Village of Eklutna.

David S. Case and Cindy Thomas, Landye Bennett Blumstein LLP, Anchorage, for Appellee Ninilchik Traditional Council.

Before: MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

1. AS 16.05.258.

2. Ch. 1, § 2, SSSLA (Second Special Session Laws Alaska) 1992.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

After the Alaska Joint Boards of Fisheries and Game promulgated a regulation classifying the communities of Eklutna, Knik, and Ninilchik as nonsubsistence areas, the communities appealed to the superior court, which held that the regulation was invalid because it did not satisfy AS 16.05.258(c). Because we conclude that the joint boards, in promulgating the regulation, did not act arbitrarily and capriciously, we reverse the decision of the superior court, thus reinstating the disputed regulation. We also conclude that the joint boards did not err by relying on the information available to them. Additionally, we reject the cross-appeal of the Kenaitze Indian Tribe, which claims that the superior court erred in upholding the classification of the remainder of the Kenai Peninsula as a nonsubsistence area.

## II. FACTS AND PROCEEDINGS

In 1992 the Alaska legislature amended the state subsistence law [1] to require the Joint Boards of Fisheries and Game to identify nonsubsistence areas, where subsistence hunting and fishing would not be permitted.[2] The statute defined a nonsubsistence area as "an area or community where dependence upon subsistence is not a principal characteristic of the economy, culture, and way of life of the area or community." [3] In determining whether an area or community qualifies as a nonsubsistence area, the joint boards are required by the statute to consider thirteen socio-economic characteristics of the area or community.[4]

Per the 1992 amendments, the joint boards met in November 1992 to identify nonsubsistence areas. The joint boards heard public testimony from affected tribe members, and considered evidence submitted by the tribes and reports from the Alaska Department of Fish and Game. The joint boards then adopted regulation 5 Alaska Administrative

3. Ch. 1, § 2, SSSLA 1992; AS 16.05.258(c).

4. AS 16.05.258(c)(1)-(13). We set out the statutory criteria in Part III.B.

Code (AAC) 99.015, which established five nonsubsistence areas in the state: the Ketchikan Nonsubsistence Area, the Juneau Nonsubsistence Area, the Anchorage–Mat-Su–Kenai Nonsubsistence Area, the Fairbanks Nonsubsistence Area, and the Valdez Nonsubsistence Area.[5] At issue in this case is the Anchorage–MatSu–Kenai Nonsubsistence Area, which encompasses most of the Kenai Peninsula, all of the Municipality of Anchorage, and a large part of the Matanuska Susitna–Borough.[6]

The Kenaitze Indian Tribe filed suit in 1991 seeking a judicial declaration that the state was not managing the salmon, hooligan, and smelt stocks in Upper Cook Inlet in accordance with the subsistence priority as required by law. The Kenaitze Indian Tribe has approximately 800 members, most of whom reside on the Kenai Peninsula, around the City of Kenai. Its members are direct descendants of the Dena'ina–Athabascan Indians. The tribe also sought an injunction barring the state from restricting the tribe's ability to engage in subsistence uses of those fish. After the joint boards established the Anchorage–MatSu–Kenai Nonsubsistence Area per the 1992 revised statute, the tribe amended its complaint to include claims that the nonsubsistence area violated its members' constitutional rights under the Alaska Constitution's equal access clauses (article VIII, sections 3, 15, 17) and equal protection clause (article I, section 1). The tribe also claimed that the joint boards' creation of the Anchorage–MatSu–Kenai Nonsubsistence Area violated the 1992 subsistence statute because the joint boards exceeded their delegated authority.

The Ninilchik Traditional Council, the Native Village of Eklutna, and the Knik Tribal Council intervened with similar claims against the state.[7] The Ninilchik Traditional Council represents a community whose members are direct descendants of the Dena'ina–Athabascan Indians. Its members live along the coast of Cook Inlet in the vicinity of Ninilchik on the Kenai Peninsula. Eklutna Village members are direct descendants of the Dena'ina–Athabascan Indians. Located within the Municipality of Anchorage, the village consisted of thirty adults and approximately seventeen children in 1992. The Knik Tribal Council represents a community located in the Matanuska–Susitna Borough; its members are direct descendants of the Dena'ina–Athabascan Indians and live along the coast of Knik Arm, near Knik and Wasilla.

The state and the plaintiffs filed cross-motions for partial summary judgment on the constitutional issues presented.[8] In October 1993 then-Superior Court Judge Dana A. Fabe granted the plaintiffs' motion and denied the state's motion. The superior court declared that the nonsubsistence area provision of the 1992 act was unconstitutional under article VIII, sections 3, 15, and 17 of the Alaska Constitution and therefore held the provision void and severable from the remainder of the 1992 act. The superior court dismissed the plaintiffs' remaining claims as moot. The state appealed the superior court's decision to this court.

In *State v. Kenaitze Indian Tribe,* we reversed the superior court's decision and held that the provision that requires the joint boards to identify nonsubsistence areas was constitutional.[9] We also held that AS 16.05.258(b)(4)(B)(ii), which conditioned eligibility for Tier II subsistence status on a whether a user's domicile was in proximity to the target resource, was unconstitutional under sections 3, 15, and 17 of article VIII of the Alaska Constitution because it impermissibly barred Alaska residents from participating in subsistence activities based on where they lived.[10] We remanded for further proceedings.[11]

---

5. 5 AAC 99.015.

6. 5 AAC 99.015(a)(3).

7. *State v. Kenaitze Indian Tribe,* 894 P.2d 632, 635 (Alaska 1995).

8. *Id.*

9. *Id.* at 642 (upholding AS 16.05.258(c), the statute requiring boards to identify nonsubsistence areas by regulation).

10. *Id.* at 638–39.

11. *Id.* at 642.

The superior court stayed the case for several years. In 2000, the Kenaitze Indian Tribe, the Ninilchik Traditional Council, the Native Village of Eklutna, and the Knik Tribal Council (collectively, the "tribes") moved for summary judgment on their statutory claims. The tribes argued that the joint boards' decision to include the communities of Knik, Eklutna, and Ninilchik within the Anchorage–MatSu–Kenai Nonsubsistence Area violated AS 16.05.258(c) because the joint boards did not correctly apply the socio-economic criteria set out in the statute. Agreeing with the plaintiffs, Superior Court Judge Mark Rindner held that the procedure the joint boards followed in including Knik, Eklutna, and Ninilchik in the Anchorage–MatSu–Kenai Nonsubsistence Area was inconsistent with AS 16.05.258(c). The court further held, however, that the joint boards' inclusion of the rest of the Kenai Peninsula in the nonsubsistence area was valid because the parties did not litigate those areas.

The state appeals. The Kenaitze Indian Tribe cross-appeals the superior court's ruling that the joint boards' inclusion of the rest of the Kenai Peninsula within the Anchorage–MatSu–Kenai Nonsubsistence Area was valid.

## III. DISCUSSION

### 1. Standard of Review

 We review grants of summary judgment de novo.[12] When a regulation is adopted in accordance with the Administrative Procedure Act,[13] and the legislature intended to give the agency discretion, we review the regulation by ascertaining whether the regulation is consistent with its authorizing statutory provisions and whether "the regulation is reasonable and not arbitrary."[14]

### 2. Whether 5 AAC 99.015 Is Consistent with Its Authorizing Statutory Provision, AS 16.05.258(c)

We first determine whether the regulation "is consistent" with its authorizing statute,[15] AS 16.05.258(c). This inquiry ensures that the agency has not "exceeded the power delegated by the legislature."[16]

 The tribes argue that the procedure the joint boards employed in adopting 5 AAC 99.015 was not consistent with the "statutory design" of AS 16.05.258(c). The tribes acknowledge that AS 16.05.258(c) allows the joint boards a certain degree of discretion in establishing the boundaries of nonsubsistence areas. But the tribes contend that the joint boards' discretion is not absolute. In support of their argument, the tribes rely on our opinion in *Native Village of Elim v. State.*[17] We there noted that the Alaska Board of Fisheries' discretion to identify fish stocks used for subsistence based on the socio-economic criteria listed in AS 16.05.258(c) was limited by two principles: "first, the boundaries that the Board ultimately adopts must be reasonably related to the twelve criteria; second, the boundaries must be consistent with the legislature's purpose to provide a preference for subsistence uses."[18]

The tribes contend that the joint boards' procedure violated the guiding principles of *Native Village of Elim* and is therefore inconsistent with the statute. They assert that the joint boards' procedure skewed the outcome—effectively "sweeping the [t]ribes' communities into a vast nonsubsistence area without independently considering their distinct characteristics." The tribes' argument impliedly attacks two of the joint boards' procedural decisions: first, by drawing proposed nonsubsistence boundaries before applying the statutory criteria; and second, by combining the Anchorage–MatSu proposed

---

**12.** *Interior Alaska Airboat Ass'n v. State, Bd. of Game,* 18 P.3d 686, 689 (Alaska 2001).

**13.** AS 44.62.

**14.** *Interior Alaska Airboat Ass'n,* 18 P.3d at 689–90.

**15.** *Id.*

**16.** *Stepovak–Shumagin Set Net Ass'n v. State, Bd. of Fisheries,* 886 P.2d 632, 636–37 (Alaska 1994) (quoting *Kelly v. Zamarello,* 486 P.2d 906, 911 (Alaska 1971)).

**17.** *Native Vill. of Elim v. State,* 990 P.2d 1 (Alaska 1999).

**18.** *Id.* at 9–10.

nonsubsistence area with the Kenai Peninsula proposed nonsubsistence area for the purposes of applying the socio-economic criteria.

Relying on the principles enunciated in *Native Village of Elim,* the superior court held that the joint boards' "overall approach" was inconsistent with the legislature's purpose of providing a preference for subsistence uses. The court observed that the joint boards placed the "cart before the horse" by drawing large nonsubsistence boundaries before applying the socio-economic criteria. The superior court noted that such an approach "fundamentally diminishes the relevance of the criteria with respect to individual communities, which in turn potentially dilutes otherwise recognizable subsistence characteristics." The superior court further determined that AS 16.05.258(c) required the joint boards to "apply the ... socio-economic criteria to individual areas or communities, evaluate the results and [then] derive a ... nonsubsistence classification *before* dealing with boundaries." (Original emphasis.)

On appeal, the state argues that the superior court erred in ruling that the joint boards' procedure for adopting its regulation was inconsistent with AS 16.05.258(c). The state contends that AS 16.05.258(c) "does not specify a procedure for the joint boards to follow" and grants the joint boards a certain amount of discretion to decide when in the process of establishing nonsubsistence areas the joint boards may start drawing boundaries.

The state's arguments are persuasive. Indeed, AS 16.05.258(c) does not specify a particular procedure for the joint boards to follow. The statute only requires the joint boards to consider the "relative importance of subsistence in the context of the totality of the following socio-economic characteristics" to identify nonsubsistence areas:

(1) the social and economic structure;

(2) the stability of the economy;

(3) the extent and the kinds of employment for wages, including full-time, part-

time, temporary, and seasonal employment;

(4) the amount and distribution of cash income among those domiciled in the area or community;

(5) the cost and availability of goods and services to those domiciled in the area or community;

(6) the variety of fish and game species used by those domiciled in the area or community;

(7) the seasonal cycle of economic activity;

(8) the percentage of those domiciled in the area or community participating in hunting and fishing activities or using wild fish and game;

(9) the harvest levels of fish and game by those domiciled in the area or community;

(10) the cultural, social, and economic values associated with the taking and use of fish and game;

(11) the geographic locations where those domiciled in the area or community hunt and fish;

(12) the extent of sharing and exchange of fish and game by those domiciled in the area or community;

(13) additional similar factors the boards establish by regulation to be relevant to their determinations under this subsection.

Alaska Statute 16.05.258(c) does not expressly preclude the joint boards from drawing starting boundaries before applying the criteria, nor does it specify the order in which the joint boards must apply the criteria.[19]

■ The joint boards' decision to start with nonsubsistence boundaries before applying the criteria was not inconsistent with AS 16.05.258(c). In *Native Village of Elim,* we observed that AS 16.05.258(c) allows the joint boards "discretion to draw boundaries that are appropriate for a given set of circumstances." [20] We approvingly cited an informal opinion of the attorney general discussing the nonsubsistence criteria of AS

**19.** AS 16.05.258(c).

**20.** 990 P.2d at 11.

16.05.258(c).[21] It stated that "the joint boards may choose almost any boundary as a starting point for their deliberations."[22]

Although they encompass relatively large areas, the boundaries chosen by the joint boards as a starting point here were not improper. The joint boards derived the starting boundaries for the nonsubsistence areas from the boundaries of what they had previously classified as "non-rural" areas, per the 1986 subsistence law limiting subsistence use to residents domiciled in "rural areas" of the state.[23] The attorney general's informal opinion noted that the statutory criteria set out in AS 16.05.258(c) "are substantially similar to the regulatory criteria adopted by the joint boards to determine whether a particular area of Alaska was 'rural' under the 1986 subsistence law."[24] It also observed that "in many circumstances, the new nonsubsistence areas may not be different from the areas that were identified as [non]rural under the 1986 law."[25] Given the similarity of the rural criteria and the subsistence criteria, the joint boards did not exceed their discretion in using the non-rural boundaries as starting points for their nonsubsistence determinations.

Ultimately, the tribes appear to argue that beginning, rather than ending, with a nonsubsistence boundary prejudiced the outcome of the joint boards' deliberations. But there is no constitutional preference for a subsistence or nonsubsistence starting point for any given community. Nothing in the statute suggests that the board must first apply the statutory criteria to individual communities, like Knik, Eklutna, or Ninilchik, before drawing initial boundaries—nor do the principles enunciated in *Native Village of Elim.*

Starting with a nonsubsistence area did not permit the joint boards to avoid the responsibility of adopting boundaries "reasonably related to the twelve criteria."[26] And starting with a nonsubsistence area does not necessarily either dictate an endpoint or defeat the legislative preference for subsistence uses.[27] The procedure does not drive the substance in this case. And although the boundaries must be "consistent" with the legislative preference for subsistence uses, that does not mean that the preference itself determines the boundaries; if it did, it would undercut the significance of the statutory factors.

■ The tribes also challenge the joint boards' procedural decision to include the tribes' communities within such a large geographical area when applying the statutory criteria. The tribes maintain that "the huge geographic area selected for consideration could not help but dictate the outcome.... [A]ny community in Alaska, even an entirely subsistence-dependent one, would have no chance, if joined with Anchorage for analysis, of showing its true character as a place where dependence upon subsistence is a principal characteristic of the economy, culture, and way of life."

Using the non-rural boundaries as a guide, the joint boards initially included the communities of Knik and Eklutna within the Anchorage–MatSu Proposed Nonsubsistence Area, and included the Ninilchik community and the Kenaitze Indian Tribe within the Kenai Peninsula Proposed Nonsubsistence Area. During deliberations, the joint boards decided to first apply criterion eleven (AS 16.05.258(c)(11)) to each of the proposed non-

21. *Id.* at 10.

22. 1992 Informal Op. Att'y Gen. 77. The weight we accord to opinions of the attorney general is largely within our discretion. *See Grimes v. Kinney Shoe Corp.,* 938 P.2d 997, 1000 n. 7 (Alaska 1997); *Carney v. State, Bd. of Fisheries,* 785 P.2d 544, 548 (Alaska 1990) (stating that opinions of attorney general are not controlling but are entitled to some deference).

23. Ch. 52, §§ 9, 11, SLA 1986, codified at AS 16.05.940(22), (33) (1986). This provision of the subsistence law was struck down in *McDowell v. State,* 785 P.2d 1, 9 (Alaska 1989) (holding un-

constitutional "the residency criterion used in the 1986 act which conclusively excludes all urban residents from subsistence hunting and fishing regardless of their individual characteristics").

24. 1992 Informal Op. Att'y Gen. 77.

25. *Id.*

26. *Native Vill. of Elim,* 990 P.2d at 9–10.

27. Subsistence hunting and fishing have had statutory priority over nonsubsistence activities since 1978. Ch. 151, §§ 4, 5, SLA 1978.

subsistence areas. Alaska Statute 16.05.258(c)(11) required the joint boards to consider the geographic locations where those domiciled in the area or community hunt or fish.[28] The joint boards then decided to apply the other criteria to the geographic locations identified by criterion eleven. When applying criterion eleven to the Anchorage–MatSu Proposed Nonsubsistence Area, the joint boards decided to combine that area with the Kenai Peninsula Proposed Nonsubsistence Area because of the subsistence use patterns of Anchorage residents.[29]

■ The tribes argue that the joint boards applied criterion eleven in a manner unintended by AS 16.05.258(c). They argue that the statute "does not direct [the joint boards] to establish the boundaries of nonsubsistence areas based upon criterion 11." The state argues that the joint boards' deliberations and written findings show that "although the [b]oards started with [criterion eleven], by the end, they had considered all twelve." The state's argument is persuasive. As we stated above, the statute does not dictate the order in which the joint boards must consider the statutory criteria when they determine a nonsubsistence boundary, only that they consider the relative importance of subsistence in the context of the totality of the socioeconomic criteria.[30]

■ The joint boards' decision to use large nonsubsistence starting areas or even to combine the two proposed areas did not exceed their discretion. Although the boundaries encompassed relatively large areas, we recognized in *Native Village of Elim* that an "area or community" as the words are used in AS 16.05.258(c), may encompass "several subdistricts grouped together."[31] It is within the joint boards' discretion to combine discrete subareas for the purposes of applying the statutory criteria.

Ultimately, the size of the geographical area that the joint boards used in applying the statutory criteria appears to be relevant only to the extent that some of the·information the joint boards relied on was also organized by these larger areas. For·example, the reports of the Alaska Department of Fish and Game (ADF & G) relied on by the joint boards covered the Anchorage–MatSu Proposed Nonsubsistence Area and the Kenai Peninsula Proposed Nonsubsistence Area, respectively, and contained only a small amount of information about the tribes' communities. But the joint boards also considered public testimony from tribe members and other evidence submitted by the tribes about their particular communities. We will, however, discuss in Part III.C whether the joint boards considered evidence available to them when they made their subsistence determinations.

### 3. Whether 5 AAC 99.015 Is Reasonable and Not Arbitrary

■ The next inquiry is whether the regulation was reasonable and not arbitrary. In determining whether an administrative regulation is reasonable or arbitrary, we look at the agency's process for adopting the regulation.[32] Review "consists primarily of ensuring that the agency has taken a hard look at the salient problems and has genuinely engaged in reasoned decision making"[33] or determining whether the agency "has failed to consider an important factor."[34]

■ The tribes contend that the joint boards' regulation was arbitrary because the joint boards applied few, if any, of the statu-

---

28. AS 16.05.258(c)(11).

29. Board Member Bosworth justified combining the two areas because of the use patterns of Anchorage residents:
 [W]e will be describing initially, under this approach, the use pattern by residents of the Anchorage area, and we will find out that they go both north into the proposal for the MatSu/ Anchorage area, and also south down to Kenai, and it might just make sense that we get that entire pattern out on the table right from the start, and then work with that.

30. AS 16.05.258(c).

31. *Native Vill. of Elim*, 990 P.2d at 10.

32. *Interior Alaska Airboat Ass'n v. State, Bd. of Game*, 18 P.3d 686, 693 (Alaska 2001).

33. *Id.* at 690.

34. *Id.* at 693.

tory criteria to the Knik, Eklutna, and Ninilchik communities. They claim that the joint boards did not have enough information about the communities to engage in reasoned decision making.

The state argues that the statute does not require the joint boards to have information about every criterion for every community before making a nonsubsistence determination. Although several board members acknowledged that they had little information about Knik, Eklutna, and Ninilchik, and the joint boards' final decisional document stated as much, the state contends that "a lack of information on any particular criterion, or on several criteria, does not prevent [the joint boards] from making a determination of subsistence-dependency." We agree.

Although the joint boards considered ADF & G reports which included little information on the three communities, the tribes had ample opportunity to present evidence to the joint boards. The joint boards met from November 1 through November 7, 1992. On November 2 the joint boards conducted public hearings at which some tribe members testified. Each tribe also submitted written comments opposing the proposed nonsubsistence areas, and submitted, along with other evidence, the results of surveys completed by tribe members.

We do not interpret AS 16.05.258(c) to have imposed an implicit affirmative duty on the joint boards in this case to gather additional information on these communities before making a nonsubsistence determination. The explicit language of AS 16.05.258(c) certainly does not require the joint boards to direct ADF & G to submit more information.[35] Nor have the tribes directed our attention to any provision in the statute that would have required the joint boards to do so.

■■■ Assuming for the sake of discussion that an administrative agency could not validly promulgate a regulation if the information needed for a reasonable consideration of the statutory factors were altogether absent,[36] that is certainly not the situation here. The information proffered to the joint boards was not so altogether lacking that the joint boards had a duty to direct ADF & G to submit more information. An administrative agency may make a reasonable decision even though the information available to it is limited; complete certainty is not required.[37]

The relevant inquiry is therefore whether the joint boards engaged in reasoned decision making, using the information available to them. The tribes contend that the joint boards did not give a hard look at all of the evidence presented to them about the three communities. We disagree.

### 1. Knik and Eklutna

■■■ We first consider whether the joint boards gave a "hard look" at the Knik and

**35.** AS 16.05.258(c) provides in part:
The boards may not permit subsistence hunting or fishing in a nonsubsistence area. The boards, acting jointly, shall identify by regulation the boundaries of nonsubsistence areas. A nonsubsistence area is an area or community where dependence upon subsistence is not a principal characteristic of the economy, culture, and way of life of the area or community. In determining whether dependence upon subsistence is a principal characteristic of the economy, culture, and way of life of an area or community under this subsection, the boards shall jointly consider the relative importance of subsistence in the context of the totality of the following socio-economic characteristics of the area or community. . . .

**36.** *See Hammond v. N. Slope Borough*, 645 P.2d 750, 759 (Alaska 1982) (upholding decision of commissioner of natural resources that oil lease was in state's best interests and explaining that "if the Commissioner had no information what-

soever on the effect of oil leasing on the subsistence lifestyles, it is questionable whether he could reasonably decide that the proposed sale was in the state's best interests. However, complete certainty is not required.").

**37.** *Stepovak–Shumagin Set Net Ass'n v. State, Bd. of Fisheries*, 886 P.2d 632, 641–42 (Alaska 1994) (holding regulation not arbitrary even though joint boards had limited information when promulgating it); *Alaska Survival v. State, Dep't of Natural Res.*, 723 P.2d 1281, 1287 (Alaska 1986) (upholding department's decision to proceed with lottery to dispose of land after data on which decision was based had been revised); *Hammond*, 645 P.2d at 759–60 (holding that commissioner of natural resources' finding that lease sale was in state's best interests was reasonable despite lack of information concerning adverse effects of sale).

Eklutna communities, given the information available to the joint boards.[38] Based on our review of the record, it appears to us that the tribes offered evidence that arguably fit within these statutory criteria: subsection .258(c)(1) (social and economic structure); subsection .258(c)(3) (extent and kinds of employment for wages); subsection .258(c)(4) (amount and distribution of cash income); subsection .258(c)(6) (variety of fish and game used); subsection .258(c)(8) (percentage of those domiciled in the area or community participating in hunting and fishing activities or using wild fish and game); subsection .258(c)(9) (harvest levels of fish and game); subsection .258(c)(10) (cultural, social, and economic values associated with the taking and use of fish and game); subsection .258(c)(11) (geographic locations where those domiciled in the area or community fish or hunt); and subsection .258(c)(12) (extent of sharing and exchange of fish and game).

The joint boards also heard testimony about Knik and Eklutna from Dr. James A. Fall, a regional program manager for the Alaska Department of Fish and Game, Division of Subsistence. Although Dr. Fall did not mention all of the statutory criteria, he presented some evidence that fit within many of the same criteria as the tribes' evidence. The Anchorage–MatSu Nonsubsistence Area proposal prepared by ADF & G briefly mentioned that the residents of Knik and Eklutna still consider "the use of wild resources to be of cultural, economic, and nutritional importance."

The joint boards' members did not explicitly mention each criterion during their deliberations on Knik and Eklutna, nor were they required to do so, but their discussion reflects that they gave a hard look at the available evidence. The chair of the joint boards acknowledged that he had read the tribes' evidence "twice," characterizing some of it as "difficult to understand." The chair specifically discussed the tribes' evidence on income patterns, the percentage of food supply coming from wild fish and game per

household, and the extent to which the tribes were dependent on subsistence foods. After considering the tribes' evidence and Dr. Fall's testimony, the chair concluded that he did not see any "trends" that made him think Knik and Eklutna were distinguishable from nonsubsistence areas.

The tribes argue that to the limited extent the joint boards considered their communities, the joint boards focused "exclusively" on the communities' economies. But although the board members' comments on Knik and Eklutna primarily focused on the communities' economic characteristics, many of the board members also expressed general concerns about the effect on the culture and the traditions of the tribes—implying that the board members were cognizant of the tribes' culture and lifestyles and sensitive to them.

Based on our review of the joint boards' deliberations, we conclude that the joint boards gave a hard look at the evidence regarding the Knik and Eklutna communities. The regulation's inclusion of Knik and Eklutna within the Anchorage–MatSu–Kenai Nonsubsistence Area was therefore reasonable and not arbitrary.

### 2. Ninilchik

We also conclude that the joint boards gave a hard look at the evidence relevant to the Ninilchik community. The Ninilchik Indian Council presented evidence of the Ninilchik residents' unemployment rates, relevant under subsection .258(c)(3) (extent and the kinds of employment for wages). The tribe also presented evidence germane to the following statutory criteria: subsection .258(c)(6) (variety of fish and game used); subsection .258(c)(8) (percentage of those domiciled in the area or community participating in hunting and fishing activities or using wild fish and game); subsection .258(c)(9) (harvest levels of fish and game); subsection .258(c)(10) (cultural, social, and economic values associated with the taking and use of fish and game); and subsection .258(c)(12) (extent of sharing and ex-

---

**38.** The joint boards considered Knik and Eklutna together because both communities had similar use patterns.

change of fish and game). A Ninilchik resident also testified before the joint boards.

Dr. Fall presented evidence to the joint boards on the social and economic structure and the area's harvest levels. ADF & G's Kenai Peninsula Nonsubsistence Area proposal reported the yields for commercial fishers in Ninilchik, Ninilchik's per capita wild food harvest for 1982, and the extent of sharing between households.

During their deliberations on Ninilchik, board members shared personal observations of the community. Board Member Franzmann noted that Ninilchik was "a very commercial city." Other board members noted Ninilchik's economic growth, and the area's relative affluence. The chair also discussed the incomes of the Ninilchik residents. Board Member Wallen commented that Ninilchik's harvest levels fell "somewhere in between most of the communities on the Kenai." Board Member Lyons also commented on the tribe's cultural traditions, noting the testimony of a elder Ninilchik resident who was distressed by the increased amount of commercial fisheries.

■ The tribe challenges the joint boards' reliance on the "personal unsubstantiated opinions" of board members. This argument is without merit because board members may rely on their own expertise to assist them in making subsistence determinations.[39]

The tribe has not pointed to any particular evidence before the joint boards that the boards did not consider. Having reviewed the joint boards' deliberations, we conclude that the joint boards gave a hard look at the evidence regarding the Ninilchik community. We therefore hold that the regulation's inclusion of Ninilchik in the Anchorage–MatSu–Kenai Nonsubsistence Area was reasonable and not arbitrary.

### D. Whether It Was Reasonable and Not Arbitrary To Include the Kenai Peninsula Within the Anchorage–MatSu–Kenai Nonsubsistence Area

■ The superior court judgment awarding summary judgment to the tribes declared

5 AAC 99.015(a)(3) invalid to the extent the regulation included Knik, Eklutna, and Ninilchik in the Anchorage–MatSu–Kenai Nonsubsistence Area. But the judgment held that the regulation's inclusion of the Kenai Peninsula in the nonsubsistence area, except for the community of Ninilchik and other areas already excepted by the regulation, was not invalid. It stated that these other areas were not litigated by the parties.

■ The Kenaitze Indian Tribe, the original plaintiff in this suit, has filed a cross-appeal from this ruling; it argues that "at every stage" in the ten-year litigation, it has "contested the validity of the [j]oint [b]oards' inclusion of the tribe's hunting and fishing grounds within the Anchorage–MatSu–Kenai nonsubsistence area."

It seems to be correct, as the tribe argues and the state concedes, that the tribe did litigate this issue in the superior court. Before the joint boards convened in November 1992, the Kenaitze Indian Tribe, along with the Ninilchik Traditional Council, submitted to the joint boards written comments that asked the joint boards to exclude the Kenai Peninsula from any nonsubsistence area under AS 16.05.258(c). In December 1992, after the joint boards established the Anchorage–MatSu–Kenai Nonsubsistence Area, the Kenaitze Indian Tribe filed an amended complaint seeking a declaratory judgment invalidating the joint boards' inclusion of the tribe's hunting and fishing areas within the nonsubsistence area. In February 2002 the Ninilchik Traditional Council, the Native Village of Eklutna, and the Knik Tribal Council intervened. Many of the arguments in the tribes' motion for summary judgment applied to the members of all of the tribes, but some parts of the motion specifically addressed the Kenaitze Indian Tribe's claim that its hunting and fishing grounds on the Kenai Peninsula should not have been included in the nonsubsistence area. Because the issue was litigated in the superior court, one possible

---

**39.** *State v. Hebert,* 743 P.2d 392, 397 (Alaska App.1987), *aff'd,* 803 P.2d 863 (Alaska 1990); *see* *also* 2 AM.JUR.2D *Administrative Law* § 209 (2003).

remedy for this error would be remand to the superior court.

But given the long delays in this litigation (the Kenaitze Indian Tribe first filed suit in 1991) and the fact that the joint boards' regulation was promulgated in 1992, we are reluctant to remand to the superior court to carry out the same review that we have already conducted. We therefore think it is better in this case for us to consider the merits of whether the regulation is invalid, rather than remand to the superior court, with the potential for further appeals.

As part of our consideration of the validity of the regulation with respect to Ninilchik, Knik, and Eklutna in the state's appeal discussed above, we have reviewed the evidence before the joint boards and the comments of the board members about evidence pertaining to the Kenaitze Indian Tribe and the Kenai Peninsula.

The ADF & G report covering the Kenai Peninsula included information on the City of Kenai, where many Kenaitze members reside. The information pertained to some of the statutory criteria, including harvest levels and the percentage of City of Kenai residents engaging in hunting and fishing activities. The report specifically mentions the Kenaitze Indian Tribe in discussing AS 16.05.258(c)(10) (cultural, social, and economic values associated with the taking and use of fish and game), and in noting that the tribe's "use of fish and game may reflect values associated with [Dena'ina] cultural traditions."

The tribe submitted to the joint boards evidence that included a statement opposing the classification of Game Management Unit 15 (encompassing the majority of the Kenai Peninsula) as a nonsubsistence area. The statement included information that bore on several of the statutory criteria. The statement also summarized the results of surveys taken by tribe members. The surveys themselves were also submitted to the joint boards. Some of the tribe's members also testified in the public hearings the joint boards conducted.

Dr. Fall testified that he did not have much more to add to the public testimony. He also noted that the Division of Subsistence had "never collected any information specifically on members of the Kenaitze tribe" because the division did not organize its research in that manner. The only information Dr. Fall had on the tribe was contained in studies conducted for the City of Kenai. The joint boards also received information on the tribe's educational fishery.

It is evident from the joint boards' deliberations that the boards' members considered the public testimony and other evidence the tribe submitted. After reviewing the public testimony, Board Member Elias characterized the testimony as inconsistent, particularly the information the tribe provided on its members' incomes. Board members also discussed the testimony of a tribe member emphasizing the importance of maintaining the tribe's educational fishery.

But ultimately the joint boards had difficulty attempting to identify a discrete, geographical area in which the Kenaitze Indian Tribe was located for the purposes of applying the statutory criteria. Board Member Elias commented that members of the tribe "have moved all over, and they've dispersed in an area where you cannot define a single, local area to where the tribe does hold a ground or an area." Board Member Carlisle also noted that "the difficulty . . . in trying to isolate the Kenaitze group is that they have spread out considerably on the Kenai Peninsula. They don't have a core village, if you will, such as Ninilchik."

Based on our review of the record, we conclude that the joint boards gave a hard look at the evidence presented and that the regulation is not invalid for failing to designate the Kenai Peninsula as a subsistence area. A remand is not needed because the issue does not require the resolution of any disputed issues of material fact—as evidenced by the plaintiffs' willingness to submit the issue to the superior court on summary judgment.

## IV. CONCLUSION

We consequently REVERSE the summary judgment that declared invalid the inclusion of Knik, Eklutna, and Ninilchik in the Anchorage–MatSu–Kenai Nonsubsistence Area,

and AFFIRM the summary judgment that declared valid the inclusion of the Kenai Peninsula in the nonsubsistence area.

FABE, Chief Justice, not participating.