**STATE of Alaska, DEPARTMENT OF HEALTH & SOCIAL SERVICES, MEDICAID RATE COMMISSION, Appellant,**

v.

**HOPE COTTAGES, INC., Appellee.**

No. S–5031.

Supreme Court of Alaska.

Nov. 19, 1993.

---

Mary Ann Lundquist, Glenn M. Gustafson, Asst. Attys. Gen., Anchorage, Charles E. Cole, Atty. Gen., Juneau, for appellant.

Timothy G. Middleton, Law Offices of Timothy G. Middleton, Anchorage, for appellee.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

In this case we address whether the state Medicaid payment statute mandating a "fair rate for reasonable costs" requires the State to compensate a health facility on a dollar-for-dollar basis for its workers' compensation premiums. We hold that it does not.

### I. *FACTUAL AND PROCEDURAL BACKGROUND*

Hope Cottages, Inc. (Hope) is a non-profit corporation that provides health care for the mentally retarded and developmentally disabled. Hope is a "health facility" within the definition provided by AS 47.07.080(7) and is therefore eligible to receive Medicaid for its patients. After Hope submitted its budget forms to the Alaska Medicaid Rate Commission (Commission) for fiscal year 1988, the Commission staff recommended a reimbursement rate to Hope of $261.49 per patient day. Subsequently, Hope requested that the Commission increase the recommended rate to cover the projected increase in Hope's workers' compensation insurance premiums. The Commission denied the request and set the rate at $261.49 per patient day, consistent with the staff recommendation.

Hope filed an administrative appeal with the Commission. The hearing officer denied Hope's request for an increase and affirmed the rate set by the Commission. The Commission adopted the hearing officer's decision. Hope then appealed to the superior court, arguing that the Commission should have fully compensated Hope for increases in its workers' compensation insurance cost. The superior court agreed, finding the State's denial of the increased rate inconsistent with the statutory mandate of a "fair rate for reasonable costs." The State appeals.

## II. *DISCUSSION*

### A. **Federal and State Medicaid Programs** [1]

■ Under the Medicaid program the federal government reimburses the states for a portion of payments they make to health care facilities providing medical care to the poor. Although participation in the Medicaid program is voluntary, a state that chooses to participate must comply with federal statutory and regulatory requirements. *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 502, 110 S.Ct. 2510, 2513, 110 L.Ed.2d 455 (1990); *Harris v. McRae,* 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). One of the requirements of the Medicaid Act, the Boren Amendment (Boren), governs the method by which the states establish payment rates for health care providers under the Medicaid program.

Boren requires that a state plan for medical assistance must provide

> for payment ... of the hospital services, nursing facility services, and services in an intermediate care facility for the mentally retarded provided under the plan through the use of rates ... which the State finds, and makes assurances satisfactory to the Secretary, are *reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities* in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards....

42 U.S.C. § 1396a(a)(13)(A) (1992) (emphasis added). Prior to Boren, federal law essentially required states to reimburse all "reasonable costs" of services provided. The shift from the reasonable cost approach to Boren

> represented a significant change in the federal standard. This change permitted states to alter their plans with the *pur-*

*pose of encouraging cost containment in the medical and health-related fields and allowing the states to cope with reductions in the amount of funds to be paid by the federal government to the states under the Medicaid program.*

*Wisconsin Hosp. Ass'n v. Reivitz,* 733 F.2d 1226, 1228 (7th Cir.1984) (emphasis added). The intent of Congress was clear: to encourage states to create efficient cost-cutting payment systems while ensuring adequate health services.[2]

In response to Boren, Alaska amended its Medicaid payment method in 1983. The State moved from a retrospective, cost-incurred payment method to a prospective payment system. *See* AS 47.07.070; ch. 95, § 3, SLA 1983. In 1988 Alaska's statute provided:

> The commission shall determine prospectively the rate of payment to a health facility under this chapter and AS 47.25.120–47.25.300 based on a fair rate for reasonable costs incurred by the facility. The commission shall by regulation list the factors it considers in making its rate determinations under this section.

AS 47.07.070(a).

In enacting a prospective payment method, the Alaska Legislature intended to implement the goals of Boren.

> The legislature finds that, because Medicaid is a joint state and federal program and because federal Medicaid funds have been and are likely to continue to be reduced dramatically, a retrospective payment system no longer serves as an appropriate method of compensation, nor does it respond with appropriate flexibility to continued federal cutbacks. A prospective payment system is necessary to prudently address payments to health fa-

---

**1.** For further background on the interaction between the State and Federal Medicaid programs, see *State, Dep't of Health and Social Servs. v. Alaska State Hosp. and Nursing Home Assoc.,* 856 P.2d 755 (Alaska 1993).

**2.** The legislative history of Boren states:
[T]he Committee recognizes the inflationary nature of the current cost reimbursement sys-

tem and intends to give States greater latitude in developing and implementing alternative reimbursement methodologies that promote the efficient and economical delivery of such services.

H.R.Rep. No. 158, 97th Cong., 1st Sess. 293–94 (1981).

cilities under the Medicaid and general relief medical assistance programs.

Ch. 95, § 2, SLA 1983. Thus the state statutory standard of a "fair rate for reasonable costs" reflects the Boren standard of rates that must be "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities."

As directed by the state statute, the Commission set out the rate-setting methodology in a set of regulations. *See* 7 AAC 43.683; 7 AAC 43.685; 7 AAC 43.686 (Register 99). In combination, the version of the regulations applicable here directed the Commission to determine payment by

(1) determining the facility's actual operating costs as allowed by 7 AAC 43.686 for the fiscal year ending 12 months prior;

(2) subtracting interest on long-term debt, depreciation, amortization, and operating leases (costs related to capital improvements) from the actual operating costs;

(3) adjusting forward the amount remaining by an inflation factor determined in accordance with 7 AAC 43.683; and

(4) adding capital improvement costs at the amount estimated in budget data submitted by the facility.

In essence, then, a facility is reimbursed based on a modified "cost plus" basis—actual operating costs incurred two fiscal years ago plus an inflation factor plus anticipated capital improvement costs. *See* 7 AAC 43.683, .685, .686.

The rate set by the Commission using this methodology is the central issue in dispute.

**B. Medicaid Compensation Required by the State and Federal Statutes[3]**

 The State argues that the superior court erred when it found that the state statutory standard of a "fair rate" required the State to compensate Hope fully for increases in workers' compensation insurance. The State contends that state and federal law mandate only that the overall rate paid to a facility be fair in relation to the costs incurred by the facility, not that each component of a facility's costs be compensated at a fair rate.

Hope argues that workers' compensation insurance is required by the State and that rates are the same for all carriers. Accordingly, Hope concludes that the expense should be treated as a fixed cost and passed through on an actual cost basis similar to capital improvement costs. Hope contends that the definition of "[f]airness in this [statutory] context requires that a fixed cost for an expense that is required be fully compensated."

 Hope's interpretation of the payment standard misconstrues the language and purpose of Boren and, as the State notes, would return the payment standard to the pre-Boren standard of full reimbursement of reasonable costs. Boren does not require payment of actual costs, only payment of a reasonable rate for "costs which must be incurred by efficiently and economically operated facilities." Cases interpreting Boren are clear on this point: "federal Medicaid law does not require *actual* reimbursement." *AMISUB (PSL), Inc. v. State of Colorado Dep't of Social Servs.*, 879 F.2d 789, 798 (10th Cir. 1989) *cert. denied*, 496 U.S. 935, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990). *See also, Colorado Health Care Ass'n v. Colorado Dep't of Social Servs.*, 842 F.2d 1158, 1169

---

**3.** Where the superior court acts as an intermediate appellate court, this court owes no deference to its decision, but, "[i]nstead, ... independently scrutinize[s] directly the merits of the administrative determination." *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987). In this case we are examining the Commission's interpretation of a statute and the interpretation and validity of regulations, a question of law. The substitution of judgment standard is appropriate for reviewing questions of law "where the knowledge and experience of the agency is of little guidance to the court *or* where the case concerns statutory interpretation." *Earth Resources Co. of Alaska v. State, Dep't of Revenue*, 665 P.2d 960, 965 (Alaska 1983) (emphasis added). As this case concerns a matter of statutory interpretation, we utilize the substitution of judgment standard.

(10th Cir.1988) ("The states are not required to reimburse providers for costs they actually or even reasonably incur."); *Friedman v. Perales*, 841 F.2d 47, 48 (2d Cir.1988) (" 'The efficient cost standard of the Medicaid provisions requires only that [facilities] be reimbursed for the efficient cost of their operation, not that every component of reimbursable cost be compensated at an efficient rate.' ") (quoting *Friedman v. Perales*, 668 F.Supp. 216, 225 (S.D.N.Y.1987)); *Mary Washington Hosp., Inc. v. Fisher*, 635 F.Supp. 891, 899 (E.D.Va.1985) ("the premise that a hospital is entitled under the new law to be recompensed its reasonable costs unless it is inefficient or uneconomical ... reflects a misunderstanding of [Boren]").

To support its conclusion that federal law mandates full compensation for Hope's increase in workers' compensation insurance, the superior court relied primarily on the following language found in *Multicare Medical Center v. State of Washington*, 768 F.Supp. 1349, 1398 (W.D.Wash.1991):

> The Boren Amendment does not require a state to pay all costs incurred by its hospitals or even all reasonable costs. Congress, in adopting the Boren Amendment, clearly intended to promote a more cost efficient Medicaid scheme. *Although States must therefore be given broad discretion to create their own reimbursement program, they may not provide a reimbursement plan which fails to pay all fixed as well as variable costs that must be incurred by an efficiently and economically operated health care provider providing services to Medicaid patients.*

(Emphasis added by the superior court) (citation omitted). After quoting this language the superior court stated: "The court's interpretation of the federal standard is clear: a prospective reimbursement plan may not fail to pay all fixed costs incurred by an efficiently and economically operated health care provider."

The reimbursement system at issue in *Multicare* compensated facilities for the marginal or incremental costs of treating medicaid patients, but not for "fixed" or

capital costs. The *Multicare* court found this aspect of the system to be illegal. However, the court did not hold that particular components of a facility's costs, marginal or fixed, had to be paid for. The court stated: "For purposes of determining whether the State's rates fall within the range of reasonableness, it is the entire reimbursement payment taken as a whole that is relevant, not the particular components that comprise the rate." *Id.* at 1397. Unlike the Washington system at issue in *Multicare*, Alaska's system does not exclude fixed costs in calculating reimbursement rates. The holding of *Multicare* therefore has little relevance to the present case. Further, the language quoted by the superior court from that decision does not mean, as the passage we reproduce above makes clear, that a dollar-for-dollar reimbursement of specific costs is required.

The State's interpretation of the statute complies with the policies underlying Boren. Boren was intended to provide the states with flexibility to create payment programs that encourage cost containment and efficiency. To require the State to pay all actual costs would return the payment system to pre-Boren standards. In a recent case, the Seventh Circuit rejected an interpretation of Boren that would require reimbursement of all reasonably necessary costs, stating that this

> characterization of the applicable reimbursement standard, in our view, rests on the false premise that a state is required to reimburse any efficient and economic facility for its reasonable, actual costs. This merely transmutes the post-Boren prospective rate-setting approach into the pre-Boren retrospective "reasonable cost" standard.

*Lett v. Magnant*, 965 F.2d 251, 256 (7th Cir.1992).

**C. The Rate Set by the Commission**

Federal courts that have been faced with the determination of the validity of a rate set by state Medicaid law utilize the "zone

of reasonableness" standard.[4] As the *Multicare* decision described it:

> The range of reasonableness doctrine recognizes that rate making is an inexact science and that rate making agencies must be allowed "a substantial spread between what is unreasonable because too low and what is unreasonable because too high."

*Multicare*, 768 F.Supp. at 1397 (quoting *Folden v. Washington State Dep't of Social and Health Servs.*, 744 F.Supp. 1507, 1529–30 (W.D.Wash.1990) (quoting *Federal Power Comm'n v. Conway Corp.*, 426 U.S. 271, 278, 96 S.Ct. 1999, 2004, 48 L.Ed.2d 626 (1976))). Boren does not require the State to pay any specific rate or percentile, it only requires that the rates be "reasonable and adequate." The United States Supreme Court indicated in *Wilder* that a range of rates existed within which the states could determine payment. *Wilder*, 496 U.S. at 519–20, 110 S.Ct. at 2522–23 ("While there may be a range of reasonable rates, there certainly are *some* rates outside that range that no State could ever find to be reasonable and adequate under the Act.").[5]

As noted, Hope's sole contention is that non-reimbursement of a single component, workers' compensation insurance, is unreasonable. Hope does not directly discuss the reasonableness of the overall rate. It appears from the record that the Commission followed the regulations in setting the rate and did not violate state or federal law in refusing to reimburse Hope's entire workers' compensation insurance expense. Without evidence challenging the validity of the overall rate, no basis exists to hold that the rate is outside the range of reasonableness.

### III. CONCLUSION

The superior court's holding that the state Medicaid payment statute requires the State to compensate Hope fully for its workers' compensation insurance premiums is REVERSED. The rate set for Hope by the Commission has not been shown to be beyond the range of reasonableness. Therefore this case is REMANDED to the superior court with instructions to AFFIRM the decision of the Commission.

---

4. *See, e.g., Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 520, 110 S.Ct. 2510, 2522, 110 L.Ed.2d 455 (1990); *Colorado Health Care Ass'n v. Colorado Dept. of Social Servs.*, 842 F.2d 1158, 1167 (10th Cir.1988); *Wisconsin Hosp. Ass'n v. Reivitz*, 733 F.2d 1226, 1233 (7th Cir.1984); *Multicare*, 768 F.Supp. at 1396–97.

5. The *Multicare* court not only adopted the zone of reasonableness standard, but went on to state that the allowable range "for Medicaid rate payments is especially broad because of Congress's intent in enacting the Boren Amendment of conferring greater flexibility on the state agencies." 768 F.Supp. at 1397 (citing *Folden*, 744 F.Supp. at 1530).