STATE of Alaska, DEPARTMENT OF
HEALTH & SOCIAL SERVICES,
Appellant,

v.

VALLEY HOSPITAL ASSOCIATION,
INC., Appellee.

No. S–11286.

Supreme Court of Alaska.

July 1, 2005.

Linda L. Kesterson, Assistant Attorney General, Anchorage, Gregg D. Renkes, Attorney General, Juneau, for Appellant.

John F. Sullivan, Inslee, Best, Doezie & Ryder, P.S., Bellevue, Washington, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

MATTHEWS, Justice.

## I. INTRODUCTION

The Alaska Department of Health and Social Services (DHSS) appeals a decision by the superior court directing DHSS to recalculate Valley Hospital Association's (Valley's) reimbursement for the cost of treating Medicaid patients.[1] We agree with the superior court that the rate set by DHSS was improper. We set out the superior court order below, and adopt it with three modifications. Chief among these modifications, which are discussed following the superior court order, are that (1) we believe the rate-setting was arbitrary and capricious and do not decide its constitutionality, and (2) the superior court should not have directed the method DHSS must use in recalculating Valley's reimbursement rate. We also reject DHSS's argument, not addressed by the superior court, that a prior adjudication precluded Valley from challenging the validity of the rate-setting regulation.

## II. THE SUPERIOR COURT ORDER

### ORDER

Appellant Valley Hospital ("Valley") appeals from a final, adverse administrative decision of the State of Alaska, Department of Health and Social Services ("DHSS"), denying Valley's fiscal year 2001 Medicaid rate appeal. DHSS established the rate in November 2000, based on data contained in a Medicaid cost report filed by Valley in June 2000. DHSS set the rate pursuant to a newly proposed rule, subsequently enacted effective December 30, 2000, as 7 AAC 43.685. Valley appealed the rate, and a DHSS hearing examiner recommended a grant of summary judgment against Valley. The Director adopted the proposed findings and conclusions, and Valley timely appealed to the Superior Court.

The DHSS hearing examiner's opinion held, as a matter of law, that the administrative rule under which the rate was computed, 7 AAC 43.685, was not facially arbitrary or unreasonable, and that DHSS comported with the rule in setting Valley's rate. The examiner concluded, without citation to authority, that she lacked jurisdiction to adjudicate Valley's claim of inadequate notice that the rulemaking process would result in a *post hoc* adoption of a deadline that in practical effect precluded DHSS's consideration of up-to-date cost data, which would otherwise entitle Valley to a higher reimbursement rate.

---

1. This appeal is not from a final order because the superior court remanded the case to the agency for further action. *See City & Borough of Juneau v. Thibodeau*, 595 P.2d 626, 629 (Alaska 1979) (the decision of the superior court, acting as intermediate appellate court, which reversed lower court or administrative agency and re- manded for further proceedings was a non-final order). This appeal is therefore improper but we treat it as an interlocutory petition for review in order to guide the proceedings on remand and avoid further delay. *See Tlingit–Haida Reg'l Elec. Auth. v. State*, 15 P.3d 754, 761 (Alaska 2001).

Valley's dilemma is as follows. Medicaid, as a payer of last resort, only reimburses Medicaid providers absent other sources of payment, such as insurance or liable third parties. At the time a patient is admitted to Valley, Medicaid eligibility may be unclear, and persons ultimately determined eligible may be initially logged in as Medicaid ineligible. Unfortunately, Valley's medical management computer software lacked the capacity to update or reconcile the admittance logs; thus, the logs tended to under-report the annual Medicaid patient days, and ancillary billings for patient services and supplies billable to Medicaid. Valley, for lack of current data, used its log data in its interim Medicare cost report filed in June 2000.

Historically, this inaccuracy of the logs expressed in the interim cost report had no effect on the annual rate determination. This was because Valley provided DHSS its actual Medicaid eligible billings via an electronic billing procedure, on a routine basis. A DHSS computer periodically compiled these billings in a report termed the MR–O–14. This compilation accurately established the patient days and ancillary billings, and DHSS historically relied on that report, rather than the lesser sum reported in the interim cost report deriving from the inaccurate Valley logs, to set the reimbursement rate both for routine (room rate) and ancillary (procedures, supplies) rates.

That changed in 2000. Valley filed its Medicare cost report in June 2000, utilizing log data rather than the more accurate MR–O–14 printout. It could not use the latter, because even though DHSS had produced the MR–O–14 at that time, it had not yet disseminated it to Valley. It did so July 17, 2000. In early September, 2000, Valley used the accurate MR–O–14 data in its Medicaid year-end report, filed with DHSS. In November of 2000, a DHSS employee preliminarily calculated the Valley Medicaid rate based on the accurate

cost figures in the MR–O–14 report, arriving at a rate acceptable to Valley; but that outcome was shortly to change.

One month after Valley's June 2000 cost filing, on July 17, 2000, DHSS promulgated a proposed rule change, under which its rate determination would endure for four, rather than one, years. During the rule-making process, the proposal evolved in a manner detrimental to Valley. The final rule, effective December 30, 2000, provided that the MR–O–14 data would be used solely for the routine rate (room charge), but not necessarily for the ancillary rate. The ancillary rate would be derived solely from "facility supplied information" submitted no later tha[n] June 15, 2000.

The hearing examiner's opinion, adopted by the director, found that Valley's June 2000 Medicare cost report was the only timely submitted, facility-generated data. Even though DHSS possessed the more accurate M[R]–O–14 report before the deadline, and even though the data in that report was facility-generated, the hearing officer found that the report itself was an agency generated document, and thus not eligible for consideration under 7 AAC 43.685. This was so, even though the same report, had it been received by Valley before the deadline, and then resubmitted as support for its Medicare cost report, would have been accepted as facility-generated data for rate setting purposes, justifying a higher rate.

The detriment to Valley from the use of the log based, rather than electronic billing based, data, may approximate $700,000 over the four year period.[2] Valley complains that it had no notice, before the rule was promulgated in final form in the late fall, that DHSS would alter course and establish the ancillary portion of the FY 2001 rate by disregarding the MR–O–14 report in favor of inferior data. It therefore alleges a violation of its constitutional right to procedural due process in the form of timely notice of the rule change, with an

**2.** Editorial note: The superior court accepted Valley's representation that the under-reimbursement resulting from use of the log data exceeded $700,000. This estimate was based on DHSS's representation that it would continue to calculate Valley's reimbursement for 2004 based on adjustments to the 2001 rate. But since then DHSS has agreed to calculate Valley's 2004 reimbursement using new data, with the result that Valley's estimate of its loss has diminished to $535,949.

attendant opportunity to cure the filing defect. While Valley considers the June 15 annual deadline to be arbitrary, it is fully capable of prospective compliance with the deadline. Therefore, this case in the first instance presents a question of procedural, rather than substantive, due process.

DHSS argues that Valley, as a scofflaw filing an inaccurate Medicare cost report, deserves its fate. The agency makes no claim that the rate it set is in fact accurate, or superior in integrity to a rate established by accurate data; instead, it argues that the composite rate structure falls within broad standards of general fairness, even though Valley was *de facto* treated disparately from other Medicaid providers who were able to accurately report their cost data.

In an administrative appeal, the Court reviews factual findings for sufficient evidentiary support.[1] A deferential rational basis standard applies to questions of law requiring agency expertise.[2] For all other questions of law, however, the Court substitutes its own judgment in a *de novo* review.[3]

The requirements of the Alaska Constitution's due process clause, Article I § 7, apply in an administrative setting.[4] Alaska has adopted the three-part balancing test outlined in *Mathews v. Eldridge*[5] to determine whether administrative proceedings satisfy due process. The Court considers:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved

and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[6]

Applying this test to the present case, the rigid application of 7 AAC 43.685 proposed by DHSS cannot stand. Valley's interest in full reimbursement for Medicaid patients, achieved by a rate that accurately reflects Valley's costs, is great; the difference stands close to $700,000 over four years. This loss easily could have been averted by administrative safeguards. Had DHSS merely allowed Valley to rectify its data once it received notice of the change, a more just and proper rate would have resulted.

DHSS has invested time and effort into the propagation of rule 7 AAC 43.685, and it has an interest in preserving its effect. Nonetheless, to rigidly apply the rule here would violate Valley's procedural due process rights.

DHSS and Valley did not come to the present dispute as strangers; the two entities have a long established relationship. In this instance, Valley acted as it always had done. The cost report filed in June had always been irrelevant, and there was no reason for Valley to think otherwise this time. Valley reasonably expected the same treatment it had received in previous years.

There was no reason for Valley to expect the cost report to dictate the 2001 rate, when everyone understood the cost report data to be faulty. Even from the outset, the proposed rule failed to indicate the weight of the June report. When the present rule became formalized long after all deadlines had passed, it drastically changed from the expectations of the parties. As a result, Valley must be afforded

1. *DeYonge v. NANA/Marriott,* 1 P.3d 90, 94 (Alaska 2000).

2. *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.,* 746 P.2d 896, 903 (Alaska 1987).

3. *Id.*

4. *Balough v. Fairbanks North Star Borough,* 995 P.2d 245, 266 (Alaska 2000).

5. 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

6. *Whitesides v. State, Dep't of Public Safety, Div. of Motor Vehicles,* 20 P.3d 1130, 1135 (Alaska 2001).

an opportunity to correct its understandably erroneous data.

By requiring Valley to provide accurate information by June 15, 2000, and informing Valley of this requirement several months after the fact, DHSS exceeds its authority to act retroactively. AS 44.62.240 limits such retroactive action when an agency's regulation is primarily legislative, as opposed to primarily interpretative. Such legislative regulations have prospective effect only. As the firm deadline for financial submissions mandated by 7 AAC 43.685 falls under the former category, AS 44.62.240 prohibits the retroactive application suggested by Valley.

When similar situations have occurred elsewhere in the country, courts have agreed that procedural due process requires agencies to consider the actual costs to medical facilities, rather than strictly adhere to regulatory schemes that underestimate reimbursements. As one federal court has stated, "As a general matter, when an adjudicating agency retroactively applies a new legal standard that departs radically from the agency's previous interpretation of the law, the agency must give entities regulated by the agency proper notice and a meaningful opportunity to adjust." [7]

In Mississippi, for example, a nursing facility's computer glitch caused the facility to underreport patient costs by over $700,000. The Mississippi Division of Medicaid's regulations provided that assessment errors could be corrected prospectively from the date of correction. As a result, although the nursing facility corrected its data, and all parties agreed that Medicaid patients were treated at the facility's cost, Medicaid refused to reimburse the facility for its losses accrued before the date of correction.[8]

The court acknowledged that the agency's own regulations forbade a retroactive reimbursement. The court held, however, that due process considerations outweighed the strict interpretation of the regulations.[9]

In another case, a federal court similarly held that sudden changes in policy may not be binding upon regulated entities. In *St. Luke's Methodist Hospital v. Thompson,*[10] a hospital applied for Medicare reimbursement for atypical services using the same criteria upon which it had relied in prior years. While such requests had always been approved previously, this time the request was denied on the basis of a new interpretation of an existing regulation. While the court acknowledged an agency's authority to reevaluate an existing interpretation, it stressed that such sudden changes would receive little deference upon review.[11]

The rate setting procedure set forth in 7 AAC 43.685, as applied to Valley's fiscal year 2001 Medicaid rate, violate[s] Valley's procedural due process rights. Thus, Valley is excused from literal compliance. DHSS will calculate the 2001 rate based on the accurate M[R]-O-14, as it has historically. Subsequent rates will be calculated according to 7 AAC 43.685.

## III. DISCUSSION

We adopt the superior court's opinion, with three modifications:

■ 1. We have avoided passing on the superior court's constitutional holding, because we believe that 7 AAC 43.685 was arbitrary and capricious as applied to Valley. This is consistent with our practice of reaching constitutional issues only when the case cannot be fairly decided on statutory or other grounds.[3]

---

**7.** *Alabama v. Shalala,* 124 F.Supp.2d 1250, 1264 (M.D.Ala.2000).

**8.** *See Beverly Enters. v. Miss. Div. of Medicaid,* 808 So.2d 939 (Miss.2002).

**9.** *Id.* at 942.

**10.** 182 F.Supp.2d 765, 768 (N.D.Iowa 2001).

**11.** *Id.* at 779–80.

**3.** *See, e.g., Kenai Peninsula Fisherman's Co-op. Ass'n, Inc. v. State,* 628 P.2d 897, 908 (Alaska 1981) ("Because we find that the policy was not adopted according to proper [Administrative Procedure Act] procedures, we do not feel it is proper to reach the constitutional validity of the actual policy adopted.").

■ As a preliminary matter, we believe DHSS properly interpreted its regulation to require use of Valley's previously submitted log data in calculating reimbursement rates.[4] We also believe that, as an abstract proposition, DHSS might reasonably choose to base future reimbursement on data submitted without prior awareness of the uses to which that data might be put.[5] But the fundamental problem with what DHSS has done is that here the data appeared to be inaccurate, and DHSS knew this at the time it calculated the rate—facts that Valley alleged and substantiated in the proceedings before the commissioner, and Medicaid staff never denied.[6]

If Valley's experience were representative, 7 AAC 43.685 might well be invalid. The statute then in effect required DHSS to base reimbursement on "a fair rate for reasonable costs incurred by the facility."[7] Although we have said that this statute required reimbursement reasonably related to the Medicaid costs of an efficiently run facility rather than any one facility's actual costs,[8] we believe that a regulation that significantly under-compensated every facility's actual costs would be presumptively inconsistent with the statute. Put into the terms that we have used to review agency action generally, a regulation that significantly under-estimated most facilities' reasonable costs would, absent some cogent justification, persuade us that DHSS had not "taken a hard look at the salient problems" and had not "genuinely

4. The question is whether the department acted reasonably in construing 7 AAC 43.685 to require it to calculate ancillary charges from the Medicaid log data in Valley's Medicare report. "We review an agency's interpretation of its own regulations under the reasonable and not arbitrary standard.... [This] deferential standard of review properly recognizes that the agency is best able to discern its intent in promulgating the regulation at issue." *Stosh's I/M v. Fairbanks N. Star Borough,* 12 P.3d 1180, 1183 (Alaska 2000) (citations omitted). The regulation says that the ancillary charge component of the base rate must be calculated from "facility-reported" data (as opposed to "department-generated" data). *See* 7 AAC 43.685(b)(7)(B) and (b)(9)(B). Other sections of the regulation suggest that the MR–O–14 report is to be regarded as "department-generated" rather than "facility-reported," and also suggest that the only other data that might be used should come from Medicaid log data in a facility's Medicare report. Specifically, 7 AAC 43.685(a)(4) at times refers to the MR–O–14 as "department-generated" data, and advises use of data submitted under 7 AAC 43.679, which is the regulation requiring facilities to submit the Medicare report from which Valley's Medicaid log data was ultimately extracted. *See* 7 AAC 43.679(c). This characterization of the MR–O–14 report as "department-generated" is significant, because the only other data that might qualify as "facility-reported" is (a) the log data in Valley's Medicare report, and (b) Valley's daily billings to the department. But Valley concedes the unwieldiness of using the daily billings, and also that daily billings are not in the Medicare report submitted under 7 AAC 43.679(c). Accordingly, we think it was reasonable for staff to conclude that the log data was the only data the regulation authorized staff to use to calculate Valley's ancillary cost reimbursement, i.e., the only facility-reported data available by June 15. In addition, we note that the notice-and-comment record indicates that Medicaid staff and the

facilities submitting comments appreciated that ancillary charges would be calculated using log data. All citations to DHSS regulations in this opinion are to the regulations in effect in December 2000, when DHSS calculated Valley's reimbursement rate.

5. *See, e.g., Regions Hosp. v. Shalala,* 522 U.S. 448, 456, 118 S.Ct. 909, 139 L.Ed.2d 895 (1998); *Presbyterian Med. Ctr. of Univ. of Pa. Health Sys. v. Shalala,* 170 F.3d 1146, 1150–51 (D.C.Cir. 1999).

6. DHSS argues that it was not required to refute Valley's evidence about the problems with the log data in the agency proceedings, because the commissioner accepted staff's argument that log data could be used regardless of accuracy, and granted staff's summary judgment motion on that basis. According to DHSS, even if we believe that staff was not entitled to rely on inaccurate data, we should remand the case to the commission for additional fact-finding on whether the log data was accurate. But our view of the proceedings is that staff conceded that Valley's log data represented a "Failure to Keep Accurate Records," in the words of a section heading from staff's reply brief to the commissioner. In any event, the terms of our remand give DHSS discretion to set any rate that is a "fair rate for reasonable costs incurred by the facility," using the most accurate data now reasonably available. It may be possible to use log data in re-calculating the rate, but in doing so DHSS should come to grips with the considerable evidence submitted by Valley that its previously submitted log data is not accurate.

7. AS 47.07.070(a) (2000).

8. *State, Dep't of Health & Soc. Servs., Medicaid Rate Comm'n v. Hope Cottages, Inc.,* 863 P.2d 246 (Alaska 1993).

engaged in reasoned decision making."[9]

Yet the record does not adequately disclose whether other hospitals had the same problem that Valley had. On the one hand, we have found some indication in the notice-and-comment record that other hospitals' log data might also have under-estimated Medicaid costs; it certainly seems natural to assume that other hospitals had the same problems keeping patients' Medicaid status up-to-date. And based on our own review of the administrative record, it also appears that DHSS did not meaningfully respond to a comment that pointed out this problem when it was raised in the notice-and-comment process. But on the other hand, any evidence about other hospitals' log data has not been developed by the parties, and Valley has not discussed other hospitals' situations or any procedural defects in the rulemaking process. Therefore, although the foregoing gives us reason to question whether DHSS took the required "hard look" at the problems inherent in relying on log data when it wrote 7 AAC 43.685, we think it would be unwise for us to use this case to invalidate the regulation.

■ But the validity of the regulation and of DHSS's interpretation of it does not mean that DHSS's treatment of Valley was reasonable. Although an agency does not act illegally in most cases where the neutral application of a reasonable regulation has a harsh result, there is some authority suggesting

that adherence to a valid regulation can be illegal when there are unusual circumstances that make such adherence highly unreasonable. For example, a few federal cases have suggested that an agency violates the federal Administrative Procedure Act when it refuses to waive a policy of general application for reasons that are "so insubstantial as to render that denial an abuse of discretion."[10] Additionally, the United States Supreme Court has at times implied that the federal Administrative Procedure Act requires agencies to provide a process to obtain waivers of general policies,[11] although there is also a more recent decision by the Court rejecting this argument for situation-specific reasons.[12] And Valley has provided us with a decision by the Mississippi Supreme Court, also cited by the superior court, which holds that an agency acted arbitrarily and capriciously in refusing to correct an error in a facility's reimbursement data, even though the correction was apparently prohibited by the applicable regulations.[13]

■ Under the unusual circumstances of this case, we think DHSS was required to make an exception to 7 AAC 43.685, and to use some more reasonable method of calculating Valley's ancillary charges. This is so for a combination of four reasons: (1) as already noted, we have at least some doubt whether 7 AAC 43.685 was in fact validly promulgated; (2) even in the course of this litigation, DHSS has not provided any com-

9. *State v. Kenaitze Indian Tribe*, 83 P.3d 1060, 1067 (Alaska 2004).

10. *Bellsouth Corp. v. FCC*, 162 F.3d 1215, 1224 (D.C.Cir.1999) (quoting *Thomas Radio Co. v. FCC*, 716 F.2d 921, 924 (D.C.Cir.1983)) (upholding agency's refusal to grant waiver).

11. *FPC v. Texaco, Inc.*, 377 U.S. 33, 39, 84 S.Ct. 1105, 12 L.Ed.2d 112 (1964) (the agency properly refused request for increases in natural gas rates, where request included substantive terms forbidden by rule and the applicant did not show "reasons why in the public interest the rule should be waived").

12. *FCC v. WNCN Listeners Guild*, 450 U.S. 582, 101 S.Ct. 1266, 67 L.Ed.2d 521 (1981). This case upheld the FCC's adoption of a policy to rely on "market forces" rather than overt regulation to regulate the format of radio stations, and

rejected the argument that the agency was required to make exceptions to the "market forces" policy as a "safety valve." The court reasoned that it was proper for the agency to determine that "safety valves" would involve the agency in too much subjectivity, given "the elusive and difficult factors involved in determining the acceptability of changes in entertainment format." *Id.* at 601, 101 S.Ct. 1266. Justice Marshall argued in his dissent that "our cases have indicated that an agency's discretion to proceed in complex areas through general rules is intimately connected to the existence of a 'safety valve' procedure that allows the agency to consider applications for exemptions based on special circumstances." *Id.* at 609, 101 S.Ct. 1266. *See also* 1 RICHARD J. PIERCE, ADMINISTRATIVE LAW TREATISE § 6.6, at 358–59 (4th ed.2002) (discussing the federal cases cited above).

13. *Beverly Enters. v. Miss. Div. of Medicaid*, 808 So.2d 939, 942–43 (Miss.2002).

pelling reason (e.g., some significant administrative or methodological advantage) to prefer using facilities' previously submitted log data over other sources of information; (3) though not per se irrational, there is an inherent risk of errors anytime an agency relies on data submitted without notice of the uses to which the data might be put; and (4) most importantly, at the time it calculated Valley's reimbursement rate, DHSS's Medicaid staff appeared to have known that there was a significant discrepancy between Valley's log data and the MR–O–14 report, and that using the log data would result in a lower reimbursement rate. To borrow the terms used in the federal cases, we think DHSS's reasons for using the log data under these circumstances are "so insubstantial as to render [its rate-setting] an abuse of discretion." [14]

We hasten to add that agencies will seldom act improperly by adhering to their regulations, even when the results in individual cases are harsh. In addition, regulated parties should request an exception from an agency's application of the rule (which Valley appears not to have done) before seeking such relief via litigation; agencies should give such requests a "hard look" but are not required "to author an essay" in response.[15] But here we are convinced that Valley suffered a substantial injustice, offset by no compelling justification. We therefore agree with the superior court that DHSS acted improperly in calculating Valley's 2001 reimbursement rate.

2. Notwithstanding this conclusion, we believe the superior court should not have directed DHSS to "calculate [Valley's] 2001 rate based on the accurate MR–O–14" report. Courts reviewing agency action usually direct the agency to grant particular relief only where the "agency has no discretion to act in any other manner, and then only when the court concludes that a remand to the agency would produce substantial injustice in the form of further delay of the action to which the petitioner is clearly entitled." [16] At oral argument, counsel for Valley acknowledged the general rule but argued that the superior court's mandate to DHSS should nonetheless be affirmed to avoid the delay inherent in further agency proceedings.

We reject this approach, which would direct DHSS to re-calculate the rate using MR–O–14 data, because it is not clear to us that the only reasonable way to calculate Valley's ancillary charge reimbursement is to rely solely on the MR–O–14 report. For example, Medicaid staff submitted evidence in the agency proceedings that the MR–O–14 has historically been used as an "audit tool," and that it would be improper to set rates based exclusively on the MR–O–14 report without using other sources to verify whether its data are correct. In response, Valley cites acknowledgments by Medicaid staff that the MR–O–14 is "fairly reliable," and that the staff had begun "to rely more and more" on MR–O–14 data to set rates in the period before the new regulation was promulgated. But Valley's points do not necessarily refute the staff's objection about verification; a "fairly reliable" source of data is not necessarily one that can be used without verification. Even so, we might agree with Valley and the superior court about the reliability of the MR–O–14 if we were able to exercise de novo review on a full record. But we are not in this position. Instead, we are essentially reviewing an agency decision, which was elicited by the staff's summary judgment motion, and which did not include any findings of fact. We therefore think it would be improper for us to re-write the rate in a way that resolves this factual dispute in Valley's favor.

We trust that the commissioner's office will take up the re-calculation of Valley's rate promptly, just as it appears to have promptly adjudicated Valley's challenge to the original

---

**14.** *Bellsouth Corp.,* 162 F.3d at 1224.

**15.** *Id.*

**16.** 3 Richard J. Pierce, Administrative Law Treatise § 18.1, at 1323–24 (4th ed.2002). *Cf. Jones v. Commercial Fisheries Entry Comm'n,* 649 P.2d 247, 251 (Alaska 1982) (where an agency adjudicated a limited entry permit application without considering whether special circumstances applied, the case would be remanded to agency for reconsideration).

rate.[17] In doing so, the agency should adopt a "fair rate for reasonable costs incurred by the facility,"[18] using the most accurate data now reasonably available.

3. We also reject DHSS's argument that a prior adjudication precludes Valley from challenging the regulation.

The purported prior adjudication began with Valley's administrative appeal from the commissioner's order. This appeal included claims that (a) 7 AAC 43.685 was invalid and (b) the commissioner had not properly interpreted the regulation. The appeal was originally heard by Superior Court Judge Donald Hopwood, who accepted briefing on the merits but then decided that he did not have jurisdiction to hear that part of Valley's appeal challenging the validity of the regulation. He dismissed those claims pursuant to DHSS's motion, suggested that Valley file a separate declaratory judgment action challenging the regulation, and stayed the rest of the administrative appeal. Valley duly filed a separate declaratory judgment action challenging the validity of the regulation on both substantive and procedural grounds. But Valley's declaratory judgment complaint also included at least some claims touching on the commissioner's interpretation of the regulation—i.e., claims that remained pending (and stayed) before Judge Hopwood. The declaratory judgment action was assigned to Superior Court Judge Peter Michalski, and he granted DHSS's motion to dismiss these "overlapping" claims, on the ground that they were still pending in the administrative appeal. The parties then stipulated that the rest of the declaratory judgment action was dismissed with prejudice, subject however to the important caveat that "[t]his stipulation does not apply to Valley Hospital Association's administrative appeal of its fiscal year 2001 rate...." Valley then returned to its administrative appeal, which owing to a change of venue was now being heard by Superior Court Judge John Suddock instead of Judge Hopwood. Valley moved to lift the stay and requested oral argument on the merits briefs submitted to Judge Hopwood years before, which included challenges to the validity of the regulation; DHSS did not oppose the motion. Judge Suddock heard oral argument and issued the opinion set out above.[19]

The normal rule is that claim preclusion (res judicata) "precludes a subsequent suit 'between the same parties asserting the same claim for relief when the matter raised was or could have been decided in the first suit.'"[20] Although our precedents occasionally include broad statements that stipulated dismissals have "the same res judicata effect as a final judgment after trial,"[21] we believe that in practice preclusion should operate more narrowly where the parties have not tried the case to a conclusion and have attempted to terminate only part of the dispute. Specifically, in cases where the parties dismiss certain claims but express an agreement to preserve certain disputes for future litigation, the only claims that should be precluded by the agreement are those claims that the parties intended to preclude from future litigation.[22] In making this determination, we will read the parties' agreement to dismiss the claims as if it were a contract, and resolve cases of "impenetrable obscurity" in favor of the party seeking to avoid preclu-

17. Valley was first notified of the reimbursement rate in December 2000. The final order of the DHSS commissioner approving the rate and rejecting Valley's challenge was in October 2001.

18. AS 47.07.070(a) (2000).

19. Although DHSS now claims that the stipulated dismissal of the declaratory judgment action precluded Valley from challenging the validity of the regulation, it is unclear whether this argument was raised with Judge Suddock. Judge Suddock's notes of the argument do not mention possible claim preclusion, and DHSS appears to have been content to rely on its prior merits briefs, without submitting additional papers to Judge Suddock on the claim preclusion issue.

20. Robertson v. American Mechanical, Inc., 54 P.3d 777, 780 (Alaska 2002) (quoting State v. Smith, 720 P.2d 40, 41 (Alaska 1986)).

21. Tolstrup v. Miller, 726 P.2d 1304, 1306 (Alaska 1986).

22. DeNardo v. Calista Corp., 111 P.3d 326, 332 (Alaska 2005).

sion.[23] This rule seems the fairest way to prevent parties from being surprised by expansive judicial interpretation of intentionally narrow agreements.

Under this standard, we think the stipulated dismissal did not preclude Valley from continuing to challenge the validity of the regulation. The question is what claims the parties intended to dismiss by the stipulation. The stipulation says that it "does not apply to Valley Hospital Association's administrative appeal of its fiscal year 2001 rate." DHSS's briefing to this court fails even to refer to, much less explain, this language. It is true that the language could be read to manifest an intent to exempt only those administrative claims that survived Judge Hopwood's jurisdictional dismissal—i.e., claims attacking the interpretation of the regulation rather than claims challenging the validity of the regulation. But it is also plausible to read the language as covering all the claims originally asserted in the administrative appeal, which would include the challenge to the validity of the regulation as applied to Valley. The parties might have expected that Valley would re-assert these claims once a new venue and a new judge were obtained, an impression strengthened by the fact that this is what actually happened (i.e., DHSS and Valley agreed to submit the appeal to Judge Suddock on the old merits briefs, which included challenges to the validity of the regulation). Given these circumstances, and given that ambiguities should be resolved against preclusion, we believe that it is fair to conclude that Valley was properly not precluded from asserting its claim that the rate-setting regulation was invalid.

## IV. CONCLUSION

The order of the superior court is AFFIRMED, except that we VACATE the superior court's order to re-calculate Valley Hospital's reimbursement rate using the MR–O–14 report. We REMAND the case to the Department of Health and Social Services so that it may set a rate in a manner not inconsistent with this opinion.

---

**23.** 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4443, at 273–75 (2d ed.2002):

> Preclusion also should be denied if the parties have found it desirable to settle on terms that finally dispose of one part of a single claim but that expressly leave another part of the claim open for further litigation. Inevitably, courts must struggle with the uncertain consequences of ambiguous settlement agreements and judgments. The conflicting pressures are apparent, but impenetrable obscurity is likely to be resolved against preclusion.