**Rhoda LEWIS, Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF CORRECTIONS, Appellee.**

No. S–11892.

Supreme Court of Alaska.

July 28, 2006.

Ted Stepovich, Law Office of Ted Stepovich, Anchorage, for Appellant.

Marilyn J. Kamm, Assistant Attorney General, and David W. Márquez, Attorney General, Juneau, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Rhoda Lewis is a state prisoner in the custody of the Alaska Department of Corrections (DOC). We consider here whether she was denied due process when DOC rejected her request to be examined by a physician of her choosing for the purpose of gathering evidence to support her application for executive clemency. Because Lewis did not make out any showing of a medical condition that might have entitled her to be considered for executive clemency, we conclude that DOC

did not deny her due process and therefore affirm the judgment of the superior court.

## II. FACTS AND PROCEEDINGS

Rhoda Lewis was convicted of second-degree murder in 1997 and was sentenced to serve sixty years in prison with fifteen years suspended. Her sentence was upheld on appeal.[1] She will not be eligible for parole until 2011. She is incarcerated at Hiland Mountain Correctional Center, a facility administered by the Alaska Department of Corrections (DOC).

In September 2002 Lewis applied for executive clemency, citing two reasons: She claimed that her crime was an "aberration and will never happen again," and that her health was "poor and appears to be worsening." She stated that she feared that she would not survive until 2011. She also noted her good behavior and work ethic in prison. In support of her application, Lewis stated that she was submitting letters from individuals and medical records from Providence Medical Center, Alaska Native Medical Center, Fairbanks Clinic, and DOC. The appellate record does not contain any of those materials.

In December 2002 the Alaska Board of Parole informed Lewis that she was not eligible for executive clemency. The board explained that it will not consider an application for executive clemency before an applicant is eligible for parole except upon a "substantial showing of innocence" or other "exceptional circumstance arising since trial."

In January 2003 Lewis began preparing another application for executive clemency. In February her attorney wrote to the Hiland Mountain superintendent requesting that Lewis be examined by a doctor of her own choice. The letter explained that the examination was "essential for a number of reasons," including ascertaining whether another application for executive clemency was appropriate. Assistant Attorney General John Bodick responded and denied Lewis's request to be seen by an outside doctor because "[t]he Department has a long-stand-

---

**1.** *Lewis v. State*, Mem. Op. & J. No. 4021 (Alaska App., March 24, 1999), 1999 WL 158951.

ing policy and practice of denying requests for outside medical examinations." Bodick noted that neither Lewis's attorney nor DOC medical staff had indicated anything "unusual or extraordinary" about Lewis's medical condition warranting a deviation from standard practice.

On March 7 Lewis's attorney wrote to Bodick complaining that Lewis had yet to receive her results from blood samples taken two months prior. Bodick responded on April 21 and informed Lewis's attorney that a DOC physician had "counseled" Lewis regarding the results sometime between March 7 and April 21. According to Bodick, DOC medical staff had informed Bodick that Lewis was "generally in good health and that it appears there are no legitimate medical grounds for her to be released from prison through the clemency process."

In the meantime, on March 12 Lewis filed a grievance and asked to see a doctor of her own choice at her own cost, both to support her clemency application and because of her distrust of DOC medical care providers. The grievance coordinator immediately rejected the petition, noting that Lewis's attorney's letter to Bodick had removed the grievance from DOC's jurisdiction.

On April 30 Lewis filed a superior court complaint against the state, requesting declaratory judgments "resolving the question regarding right of access to independent medical opinion evidence" and "regarding the adequacy of the DOC's grievance procedure."

In November 2004 both parties moved for summary judgment. The state argued that the superior court lacked jurisdiction because Lewis had not alleged a constitutional violation and because Lewis's claim regarding the adequacy of the grievance procedure was moot. Lewis denied that she was asserting a right to medical care; instead, she explained that she was arguing that she had exercised her First Amendment right to apply for clemency and was being denied the right to gather evidence to support that application. The state also argued that Lewis's claims regarding the clemency process were not

ripe because she did not have a legal right to apply for clemency until 2011. Finally, the state argued that because prisoners do not have a liberty interest in clemency, there can be no due process violation associated with the clemency process.

On January 28, 2005 the superior court granted summary judgment to the state. The superior court decided that Lewis's claim was ripe and that the court had jurisdiction to hear the case. As to the parties' substantive arguments, the court decided that no constitutional violation occurred in the grievance procedure when Lewis's request for an independent medical exam was denied. And the court decided that because Lewis does not have a cognizable liberty interest in clemency, she cannot have a due process claim with respect to clemency procedures. The court consequently granted summary judgment to the state on both counts in Lewis's complaint.

In an order on reconsideration, the superior court modified the reasoning of its previous decision. The court noted that it had overlooked directly controlling precedent in which the United States Supreme Court stated that "some *minimal* procedural safeguards apply to clemency proceedings."[2] But the superior court concluded that the state's denial of Lewis's request to see a private doctor to support her application for clemency "was not an arbitrary or unconscionable denial of access to the clemency process that the State has established."

Lewis appeals, arguing that she has a due process right to gather evidence to support her application for executive clemency.

## III. DISCUSSION

### A. Standard of Review

We review a superior court's grant of summary judgment de novo, drawing all factual inferences in favor of, and viewing the facts in the light most favorable to, the non-

---

**2.** *See Ohio Adult Parole Auth. v. Woodard,* 523 U.S. 272, 289, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998) (emphasis in original).

prevailing party.[3] We review questions of law, including constitutional questions, using our independent judgment and will adopt the rule of law that is most persuasive in light of precedent, reason, and policy.[4]

### B. The Clemency Issue Is Ripe for Decision.

 The superior court concluded that Lewis's claim is ripe because there is an "actual controversy" about whether Lewis has "an exceptional health condition that might warrant executive clemency prior to parole eligibility."

The state argues that Lewis's clemency application will not be ripe until Lewis's 2011 applications for discretionary parole and executive clemency are denied. But this argument conflicts with the parole board's own eligibility criteria. The board's informational booklet for prospective clemency applicants, *Executive Clemency in Alaska*, states:

> Generally, applications for executive clemency will not be considered until after the person has served some portion of the sentence. Applications will not be considered until the person has reached his or her parole period (where applicable) or has been denied parole. *Applications may be considered earlier only upon a substantial showing of innocence or some other exceptional circumstance arising since trial, which clearly justifies a possible extension of executive clemency.*

(Emphasis added.) Therefore an application presenting an "exceptional circumstance" may be considered before the applicant has reached her parole period. Lewis argued in the superior court and argues here on appeal that she hopes to prove an "exceptional circumstance" making clemency appropriate before she becomes eligible for parole. Because it is at least theoretically possible that a prisoner could suffer from an exceptional health condition warranting executive clemency before she reaches parole eligibility, the superior court did not err in concluding that Lewis's constitutional claim is ripe.[5]

### C. DOC Did Not Violate Lewis's Procedural Due Process Rights by Denying Her Request To Be Examined by a Private Doctor.

 In its order on reconsideration, the superior court decided that the state's denial of Lewis's request to be examined by a private doctor did not violate due process. Both parties acknowledge on appeal that the state's clemency process must comport with some amount of due process. But the parties disagree about the extent of due process safeguards in clemency proceedings. Lewis argues that she has a right under the Alaska Constitution to be seen by a doctor of her choosing to gather evidence to support her application for clemency. The state argues that the current clemency process provides adequate due process protections and that the state is not constitutionally required to allow a prisoner to see a doctor of her choosing to support her application for clemency.

 We agree with the superior court that some due process protections apply to clemency proceedings.[6] Because the state allows

---

3. *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005).

4. *Simpson v. Murkowski*, 129 P.3d 435, 440 (Alaska 2006).

5. *See* AS 22.10.020(g) ("In case of an actual controversy in the state, the superior court, upon the filing of an appropriate pleading, may declare the rights and legal relations of an interested party seeking the declaration, whether or not further relief is or could be sought."); *Brause v. State, Dep't of Heath & Soc. Servs.*, 21 P.3d 357, 360 (Alaska 2001) ("[R]ipeness turns on the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." (internal quotation marks omitted)).

6. *See Woodard*, 523 U.S. at 289, 118 S.Ct. 1244 (O'Connor, J., concurring); *see also INS v. St. Cyr*, 533 U.S. 289, 345, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) ("The furthest our cases have gone in imposing due process requirements upon analogous exercises of Executive discretion is ... requir[ing] 'minimal procedural safeguards' for death-penalty clemency proceedings, to prevent them from becoming so capricious as to involve 'a state official flipp[ing] a coin to determine whether to grant clemency.' ") (quoting *Woodard*, 523 U.S. at 289, 118 S.Ct. 1244); *Noel v. Norris*, 336 F.3d 648, 649 (8th Cir.2003) (holding due process not violated where inmate was not allowed to undergo special brain scan, but was able to present four-hundred page record that included evidence of brain damage in support of his clemency application); *Gilreath v. State Bd.*

prisoners to apply for executive clemency, it must provide applicants with some procedural due process during the clemency process.[7] If a prisoner relies on a particular basis recognized by the state as a potential ground for clemency, the prisoner must have a fair opportunity to make a factual showing that the ground has been satisfied.

We apply the test outlined by the United States Supreme Court in *Mathews v. Eldridge*[8] in deciding whether Lewis had a fair opportunity to demonstrate that her medical condition satisfies the board's clemency eligibility criteria.[9] This test takes these factors into account:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the [probable] value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[10]

We assume here both that Lewis has a significant interest in being able to generate information needed to support her clemency application and that the state has a legitimate interest in structuring prisoners' access to medical attention. We also assume that the state's decision not to grant Lewis access to a doctor of her own choice could have the effect of preventing her from generating information supporting her application for clemency, thereby denying her access to potentially important relief. But Lewis has not demonstrated any real-world value of gaining access to a private doctor. Lewis did not attempt to rely on any readily available information to make out a showing suggesting that she has a medical condition that might justify clemency. She did not describe to DOC or to the superior court any specific medical problem that might qualify as an "exceptional circumstance" warranting clemency. Although she stated in an affidavit that she had been experiencing "extreme fatigue symptoms," she never explained to DOC or to the superior court whether or how those symptoms indicated an "exceptional circumstance" warranting clemency. She did not point to prison medical records, pre-incarceration medical records, or any opinion of prison medical staff, lay witnesses, or outside doctors suggesting she has a specific medical condition potentially justifying clemency.[11] Absent a showing of some medical condition that would justify further inquiry in order to make out an "exceptional circumstance" clemency application, and that might

*of Pardons & Paroles*, 273 F.3d 932, 934 (11th Cir.2001) (holding absence of one member of clemency board from oral hearing and mere appearance of impropriety did not violate due process in clemency context); *Young v. Hayes*, 218 F.3d 850, 853 (8th Cir.2000) (holding due process was violated where state official intentionally tried to sabotage inmate's clemency application).

**7.** *See Matson v. State, Commercial Fisheries Entry Comm'n*, 785 P.2d 1200, 1206 (Alaska 1990) ("[A] state-created right may in some circumstances constitute a sufficient entitlement to trigger the right to procedures under the due process clause.") (citing *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 463, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981)).

**8.** *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

**9.** *See State, Dep't of Health & Soc. Servs. v. Valley Hosp. Ass'n*, 116 P.3d 580, 583 (Alaska 2005); *see also Brandal v. State, Commercial Fisheries Entry Commn.*, 128 P.3d 732, 738 (Alaska 2006).

**10.** *Valley Hosp. Ass'n*, 116 P.3d at 583 (quoting *Whitesides v. State, Dep't of Pub. Safety, Div. of Motor Vehicles*, 20 P.3d 1130, 1135 (Alaska 2001)). *Valley Hospital Ass'n* and *Brandal* quoted *Mathews v. Eldridge* but inadvertently substituted "probative" for "probable." *See Brandal*, 128 P.3d at 738; *Valley Hosp. Ass'n*, 116 P.3d at 583.

**11.** Lewis's original executive clemency application stated that she was being treated for various medical problems, including arthritis, lower back pain, stomach problems, diverticulitis, hiatal hernia, and cataracts. The clemency application asserted that she was providing medical records demonstrating those conditions. But Lewis did not submit those or any other medical records to DOC when she requested access to an outside doctor and she did not submit them to the superior court as part of her action for declaratory relief. The appellate record therefore contains no medical records. She therefore failed to demonstrate in this case how DOC's denial of access to her own physician potentially interfered with her pursuit of clemency.

justify examination by a medical professional of the prisoner's own choosing, there is no due process denial.

Lewis argues that two cases from the United States Court of Appeals for the Eighth Circuit—*Noel v. Norris*[12] and *Young v. Hayes*[13]—support her argument that she has a right to be seen by a private doctor to gather evidence to support her clemency application. In *Noel*, a prisoner under sentence of death claimed that the State of Arkansas violated his due process rights by interfering with his ability to prepare and present his case for executive clemency.[14] The state refused to allow Noel to undergo a "particular kind of brain-scan procedure to prove his assertion that his brain damage ought to be considered on the question of whether he deserved clemency."[15] But the state had allowed Noel to present a four-hundred page record supporting his clemency application; that record included some evidence of Noel's brain damage.[16] The Eighth Circuit held that the state's process was not so arbitrary as to be unconstitutional and that the state did not prohibit Noel from using the procedure it had established.[17] Like Noel, Lewis was not precluded from presenting evidence of her medical condition, but was not allowed to investigate her health situation with an outside medical examination.[18] *Noel* therefore does not advance Lewis's argument.

In *Young*, the Circuit Attorney for the City of St. Louis threatened to fire one of the lawyers under her supervision if that lawyer gave the governor information supporting a death-row inmate's clemency petition.[19] The Eighth Circuit held that the Circuit Attorney's conduct was "fundamentally unfair" and that it "unconscionably interfere[d] with a process that the State itself has created."[20] Lewis's case is distinguishable from *Young* because there is no indication any state official intentionally tried to derail Lewis's efforts to apply for executive clemency.[21]

Lewis also cites *Hilbers v. Municipality of Anchorage*[22] and *Kendall v. State, Division of Corrections*[23] to support her argument that the Alaska Constitution requires DOC to allow a prisoner to be examined by the doctor of her own choosing to support an application for clemency. Neither case supports Lewis's argument. In *Hilbers*, we discussed the due process protections that extend to the issuance of business licenses for massage parlors, not applications for clemency.[24] And in *Kendall*, a medical malpractice case, we affirmed the superior court's grant of summary judgment to the state in part because plaintiff Kendall "presented no expert affidavits and did not show, based on the evidence that was presented, that a reasonably arguable case of medical negligence existed."[25] We therefore applied the prevailing summary judgment standard; we did not create a "right" for inmates like Lewis "to secure medical evidence to support a claim" for clemency.

■ Because Lewis failed to point to any plausible indications that she had a medical condition that, if confirmed by a physician, might entitle her to clemency,[26] DOC did not violate any procedural due process protec-

12. *Noel v. Norris*, 336 F.3d 648 (8th Cir.2003).

13. *Young v. Hayes*, 218 F.3d 850 (8th Cir.2000).

14. *Noel*, 336 F.3d at 649.

15. *Id.*

16. *Id.*

17. *Id.*

18. *See id.*

19. *Young*, 218 F.3d at 851, 853.

20. *Id.* at 853.

21. *See id.*

22. *Hilbers v. Municipality of Anchorage*, 611 P.2d 31, 36 (Alaska 1980).

23. *Kendall v. State, Div. of Corr.*, 692 P.2d 953, 955 (Alaska 1984).

24. *See Hilbers*, 611 P.2d at 38–39.

25. *Kendall*, 692 P.2d at 955.

26. Our holding does not require a threshold showing of a condition warranting executive clemency. Such a requirement would impose too high a barrier to access to private medical diagnosis and care. But to trigger the protections of the Alaska Constitution, an inmate must, at the very least, point to evidence indicating that she might have a condition that might entitle her to clemency.

tions that applied to Lewis when she sought executive clemency.[27]

### D. The Board Is Not Operating a Clemency Application Process Outside Its Statutory Authority.

Lewis argues that the board does not have authority to establish clemency eligibility criteria.

The Alaska Constitution gives the governor broad authority to grant executive clemency. Article III, section 21 of the Alaska Constitution states in part: "Subject to procedure prescribed by law, the governor may grant pardons, commutations, and reprieves, and may suspend and remit fines and forfeitures." Two statutory provisions discuss the governor's clemency power. Alaska Statute 33.20.070 restates the constitutional provision. Alaska Statute 33.20.080(a) provides that the governor "may refer applications for executive clemency to the board of parole" and that the board must investigate and report to the governor on each clemency case.

The parties' briefs and the record both suggest that the governor has decided to refer all applications to the board and that the board has established clemency qualification criteria. Lewis argues that the board has no authority to establish those criteria. But that authority is inherent in the governor's executive clemency power.[28] The board has not acted outside its authority here.

### IV. CONCLUSION

Because we agree with the superior court that DOC's denial of Lewis's request to be examined by a private doctor did not violate due process under the circumstances, we AFFIRM.

---

**27.** Lewis argues for the first time in her reply brief that DOC's actions infringe on her First Amendment right to petition the government for redress of grievances. We do not consider arguments raised for the first time in a reply brief. *Reust v. Alaska Petroleum Contractors, Inc.*, 127 P.3d 807, 819 (Alaska 2005).

**28.** Lewis also argues that a prisoner could write directly to the governor and that the governor

has the authority to grant or deny the request, independently investigate the request, or ask the board to investigate the request. That may be true, but the governor's authority to deviate from the procedure he has established is consistent with his inherent powers and with AS 33.20.080(a), which states that the governor "may" refer clemency applications to the board.